984 F.2d 1350
 61 USLW 2497
 Louis J. ALIOTA and Paulette Aliota,
v.
Jack D. GRAHAM, William D. Shoemake, Kathryn Fowells, Janet
Wells, Joyce Ball, United States of America,
Appellants in No. 91-3757.
In re UNITED STATES of America, Jack D. Graham, William D.
Shoemake, Kathryn Fowells, Janet Wells and Joyce
Ball, Petitioners in No. 92-3020.
 Nos. 91-3757, 92-3020.
 United States Court of Appeals,
Third Circuit.
 Argued June 25, 1992.
Decided Jan. 22, 1993.
 
 Thomas W. Corbett, Jr., U.S. Atty., Bonnie R. Schlueter, Office of U.S. Atty., Pittsburgh, PA, Stuart M. Gerson, Asst. Atty. Gen., Barbara L. Herwig, Civ. Div., Malcolm L. Stewart (argued), Robert V. Zener, Christine N. Kohl, Appellate Section, Civ. Div., Dept. of Justice, Washington, DC, for appellants/petitioners.
 Timothy D. McNair (argued), Vendetti, Talarico and McNair, Erie, PA, for appellees/respondents.
 Before: BECKER, HUTCHINSON, and ALITO, Circuit Judges.
 OPINION OF THE COURT
 ALITO, Circuit Judge:
 
 
 1
 The United States has appealed and has filed a mandamus petition seeking review of a district court order in a defamation action that was originally begun in state court against five federal employees in their individual capacities. After the case was removed to federal court and the United States was substituted for the original defendants pursuant to a provision of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act"), 28 U.S.C. § 2679(d) (1988), the district court resubstituted the original defendants and remanded the case to state court. We hold that the district court's resubstitution decision is appealable under the collateral order doctrine; that the remand was prohibited by 28 U.S.C. § 2679(d)(2) (1988) and is reviewable by mandamus; and that the district court applied incorrect legal standards in concluding that the originally named individual defendants were not acting within the scope of their employment when they allegedly engaged in the conduct in question. We will therefore vacate the order of the district court and remand for further proceedings.
 
 I.
 
 2
 Louis J. Aliota served as chief of the pharmacy at the Veterans Affairs Medical Center in Erie, Pennsylvania, from 1980 until 1989. In 1989, Aliota was relieved of his duties as chief of the pharmacy and placed in another position.
 
 
 3
 In October 1990, Aliota and his wife began a civil action in the Court of Common Pleas for Erie County against five employees of the Medical Center. These individuals are Jack D. Graham, the director of the Medical Center; William D. Shoemake, the associate director of the Medical Center; and Joyce Ball, Kathryn Fowells, and Janet Wells, three other Medical Center employees. The plaintiffs subsequently served a motion stating that their suit was based on slander and conspiracy arising from statements made by the defendants during September and October 1989.
 
 
 4
 Represented by the Department of Justice, the defendants filed a notice of removal to the United States District Court for the Western District of Pennsylvania. In that notice, counsel for the defendants stated:
 
 
 5
 Plaintiffs' counsel represented to undersigned counsel in a telephone conversation ... that the allegedly slanderous statements at issue were made by defendants at the Erie VA Medical Center to a pharmaceutical company representative in the course of that representative's regular business visit to the Erie VA Medical Center.
 
 
 6
 ... Plaintiffs' cause of action, if any, appears to arise from actions taken by defendants in the course of their employment and, therefore, is subject to federal jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2679.
 
 
 7
 The plaintiffs subsequently filed a complaint in the federal court, alleging that "[o]n or about September 23, 1989, Defendant Kathryn Fowells made statements to one Tim Nies to the effect that Plaintiff Louis J. Aliota had been removed from his duties due to his involvement in a 'drug scandal'." The complaint further alleged that "Defendants Jack D. Graham and William D. Shoemake communicated the aforementioned defamatory statement to Kathryn Fowells with knowledge that it was false and with the intent to injure Plaintiff in his reputation." The complaint did not contain any specific allegations concerning the remaining defendants.
 
 
 8
 The United States Attorney for the Western District of Pennsylvania, exercising authority delegated by the Attorney General of the United States, certified that the five individual defendants were acting within the scope of their employment when they allegedly engaged in the conduct in question. The district court then ordered that the United States be substituted as the sole defendant and that the claims against the individual defendants be dismissed.
 
 
 9
 The plaintiffs subsequently filed a motion to remand the case and to strike the substitution of the United States as the defendant, arguing that the individual defendants had not been acting within the scope of their employment. At an evidentiary hearing on this motion, both sides requested leave to take depositions. The court granted these requests, and after the depositions were completed, the court held that none of the defendants had been acting within the scope of their employment when they allegedly made the defamatory statements. The court therefore entered an order striking the substitution and remanding the case to the state court. The United States filed a notice of appeal, as well as a petition for mandamus seeking review of the remand.
 
 II.
 
 10
 We first address the question whether the portion of the district court's order resubstituting the originally named defendants in place of the United States is reviewable by means of an appeal filed under 28 U.S.C. § 1291 (1988). This question may be divided into two subquestions: first, whether review of this portion of the district court's order is barred by 28 U.S.C. § 1447(d) (1988), which restricts review of remand orders, and second, whether this portion of the district court's order is "final" within the meaning of 28 U.S.C. § 1291 (1988).
 
 
 11
 A. We hold that review of the question of resubstitution is not barred by 28 U.S.C. § 1447(d) (1988). This provision concerns appellate review of "[a]n order remanding a case to the State court from which it was removed...." 28 U.S.C. § 1447(d) (1988). This provision says nothing about orders directing the resubstitution of parties. Accordingly, unless the question of resubstitution is viewed as somehow inextricably linked to the question of remand, 28 U.S.C. § 1447(d) (1988) does not bar review.
 
 
 12
 The Supreme Court considered a closely related issue in Waco v. United States Fidelity & Guar. Co., 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934). In Waco, the district court in a removed case issued a single order that dismissed a cross-claim and remanded the case to the state court for lack of diversity jurisdiction. The Supreme Court held that the portion of the district court's order dismissing the cross-claim was appealable despite the restriction on appellate review of remand orders contained in the statutory predecessor of 28 U.S.C. § 1447(d) (1988).[1] The Supreme Court wrote (id. at 143, 55 S.Ct. at 7):
 
 
 13
 True, no appeal lies from the order of remand; but in logic and in fact the decree of dismissal preceded that of remand and was made by the District Court while it had control of the cause. Indisputably this order is the subject of an appeal; and, if not reversed or set aside, is conclusive upon the petitioner.
 
 
 14
 See also In re TMI Litigation Cases, 940 F.2d 832, 841-42 (3d Cir.1991), cert. denied sub nom. Gumby v. General Pub. Utils. Co., --- U.S. ----, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992).
 
 
 15
 Applying this reasoning, we conclude that review of the question of resubstitution in the present case is not barred by 28 U.S.C. § 1447(d) (1988). This question is separate from and logically precedes the question of remand. We note that the Fifth Circuit reached the same conclusion in Mitchell v. Carlson, 896 F.2d 128, 132-33 (5th Cir.1990).
 
 
 16
 B. We also hold that the order of the district court, insofar as it resubstituted the originally named defendants, was "final" within the meaning of 28 U.S.C. § 1291 (1988) because it fell within the collateral order doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In order to fall within this exception to the general finality requirement, "[t]he order must conclusively determine the disputed question, resolve an important issue [that is] completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). See also Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 498, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989); Mitchell v. Forsyth, 472 U.S. 511, 524-25, 105 S.Ct. 2806, 2814-15, 86 L.Ed.2d 411 (1985). In addition, the order must involve a claim of right that is "too important to be denied review." Cohen, 337 U.S. at 546, 69 S.Ct. at 1225-26.
 
 
 17
 We believe that the district court's decision concerning the resubstitution question in this case satisfies all of these requirements. First, the district court's determination represented its final word on the resubstitution. Second, the question of resubstitution is completely separate from the merits of the defamation action. Third, the district court's decision that the individual defendants should be resubstituted would be effectively unreviewable on appeal from a final judgment. Such is the case when an order involves "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978) (footnote omitted). See also Lauro Lines, 490 U.S. at 498-99, 109 S.Ct. at 1977-79. The denial of a government official's motion to dismiss an action based upon a claim of absolute immunity is effectively unreviewable on appeal from a final judgment because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." Forsyth, 472 U.S. at 525, 105 S.Ct. at 2815. An order granting resubstitution effectively denies a federal employee's claim to absolute immunity. As we recognized in Melo v. Hafer, 912 F.2d 628, 639 (3d Cir.1990), aff'd, --- U.S. ----, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the primary purpose of the Westfall Act was to ensure that federal employees enjoyed "a status of absolute immunity for activities within their scope of employment." See also Schrob v. Catterson, 967 F.2d 929, 934 (3d Cir.1992). It therefore follows, in our view, that a resubstitution order, like an order denying a claim of absolute immunity, is effectively unreviewable on appeal from a final judgment.[2]
 
 
 18
 In Mitchell v. Carlson, the Fifth Circuit held that a resubstitution order is appealable under the "collateral order" doctrine and reasoned as follows (896 F.2d at 133):
 
 
 19
 The district court's order resubstituting [a federal employee] as defendant effectively denied [her] immunity from suit if she was entitled to such immunity under the Westfall Act. Under the Act, once the United States Attorney certifies that the federal employee acted within the scope of her employment, the plaintiff properly can proceed only against the United States as defendant. The federal employee remains immune from suit. By reviving the suit against her, the district court subjected [her] to the burden of defending a suit in state court, a burden from which she is entitled to be immune.
 
 
 20
 We agree with this reasoning and thus hold that the resubstitution order is appealable under the collateral order doctrine.[3]
 
 III.
 
 21
 A. We now come to the most difficult question in this case, i.e., whether the order of remand is reviewable despite the restriction imposed by 28 U.S.C. § 1447(d) (1988). With certain specified exceptions not pertinent here, this provision states:
 
 
 22
 An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise....
 
 
 23
 While this language is "seemingly unequivocal," it has been held to permit "appellate consideration of certain categories of remand orders." In re TMI, 940 F.2d at 841. Most notably, in Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Supreme Court held that 28 U.S.C. § 1447(d) (1970) did not preclude the court of appeals from reviewing by means of mandamus an order of the district court remanding a removed case solely because of the district court's crowded docket. The Supreme Court held that 28 U.S.C. § 1447(d) (1970) had to be read together with 28 U.S.C. § 1447(c) (1970), which required a district court to remand a case if it appeared that the case had been "removed improvidently and without jurisdiction."[4] "This means," the Supreme Court then reasoned (423 U.S. at 346, 96 S.Ct. at 590), "that only remand orders issued under § 1447(c) and invoking the grounds specified therein--that removal was improvident and without jurisdiction--are immune from review under § 1447(d)." The Court added (id. at 351, 96 S.Ct. at 593): "[W]e are not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seemed justifiable to them" but were not legally permissible. Because a crowded district court docket was not a permissible ground for remand, the Court held that the remand order in that case was reviewable.
 
 
 24
 Based on similar reasoning, we have held that a variety of remand orders are reviewable. See In re TMI, 940 F.2d at 838-48; Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1210-11 (3d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); Air-Shields, Inc. v. Fullam, 891 F.2d 63, 65-66 (3d Cir.1989); Hewlett v. Davis, 844 F.2d 109, 115 (3d Cir.1988); Levy v. Weissman, 671 F.2d 766, 768-69 (3d Cir.1982). But see Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977) (Thermtron does not apply where district court remands based on statutory grounds even if it employs erroneous principles in reaching its conclusion).
 
 
 25
 B. In order to apply the teaching of Thermtron to the present case, it is necessary to understand the background of the Westfall Act and its provisions relating to the removal of actions filed in state court.
 
 
 26
 Before the Supreme Court's decision in Westfall v. Erwin, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), the United States took the position that federal employees were absolutely immune from suits for damages under state tort law whenever their conduct fell within the scope of their official duties. See id. at 296, 108 S.Ct. at 583. In Westfall, however, the Supreme Court held that this immunity applied only to conduct that was discretionary in nature. Id. at 300, 108 S.Ct. at 585. At the same time, the Court observed (id.):
 
 
 27
 Congress is in the best position to provide guidance for the complex and often highly empirical inquiry into whether absolute immunity is warranted in a particular context. Legislated standards governing the immunity of federal employees involved in state-law tort actions would be useful.
 
 
 28
 Congress quickly responded by enacting the Westfall Act. As we explained in Melo v. Hafer, 912 F.2d 628, 639 (3d Cir.1990), aff'd, --- U.S. ----, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991):
 
 
 29
 The primary purpose of [the Westfall Act] was "to return Federal employees to the status they held prior to the Westfall decision," that is, a status of absolute immunity for activities within their scope of employment. See H.R.Rep. No. 100-700, 100th Cong., 2d sess., reprinted in 1988 U.S.Code Cong. & Admin.News 5945, 5947....
 
 
 30
 In the Federal Torts Claims Act, Congress consented to suits against the United States for certain torts committed by federal employees "while acting within the scope of [their] office or employment." 28 U.S.C. § 2672 (1988 & Supp. II 1990). Under 28 U.S.C. § 2679(b)(1) (1988), this remedy "is exclusive of any other civil action or proceeding for money damages ... arising out of or relating to the same subject matter against the employee or the employee's estate."
 
 
 31
 Whenever such an action is filed against a federal employee, the Department of Justice must provide representation. 28 U.S.C. § 2679(c) (1988). If the action is commenced in federal court and the Attorney General certifies that the employee was acting within the scope of his or her office or employment at the time in question, the United States must be substituted as the defendant. 28 U.S.C. § 2679(d)(1) (1988). If the action is commenced in state court and the Attorney General makes a similar certification, the action "shall be removed without bond at any time before trial by the Attorney General" to the appropriate district court, and the United States must then be substituted as the defendant. 28 U.S.C. § 2679(d)(2) (1988). Moreover, this provision states that "[t]his certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." Id. (emphasis added).
 
 
 32
 If the Attorney General refuses to certify that an employee was acting within the scope of the employee's office or employment, a different procedure is followed. The employee may petition the court to make such a certification. 28 U.S.C. § 2679(d)(3) (1988). If the case was filed in state court, the Attorney General may remove it without bond to the appropriate district court. Id. If the district court, in considering the petition, determines that the employee was not acting within the scope of the employee's office or employment, the case must be remanded. Id. If the district court holds that the employee was acting within the scope of the employee's office or employment, the United States must be substituted as the defendant. Id.
 
 
 33
 From this statutory scheme, we conclude that when a tort suit against a federal employee is filed in state court and the Attorney General certifies that the employee was acting within the scope of the employee's office or employment and removes the case, the district court has no authority to remand the case on the ground that the Attorney General's certification was erroneous. We believe that this conclusion is dictated by the plain language of 28 U.S.C. § 2679(d)(2) (1988) stating that the Attorney General's certification "shall conclusively establish scope of office or employment for purposes of removal " (emphasis added).
 
 
 34
 This conclusion is also supported by our opinion in Melo, 912 F.2d at 641. In that case we held that 28 U.S.C. § 2679(d)(2) (1988) does not preclude a district court from resubstituting the original defendants for the purpose of trial if the court concludes after removal that the Attorney General's certification was incorrect. See 912 F.2d at 639-42. We strongly suggested, however, that the Attorney General's certification is conclusive for the purposes of establishing a forum in which the case would proceed. We stated (id. at 641) (emphasis added) that "[t]here are significant policy reasons why Congress would choose to give the government an unchallengeable right to have a federal forum for tort suits brought against its employees," but we found "no suggestion in [the Westfall Act] that once the federal forum has been secured, Congress was inclined to make the Attorney General's right to substitute the government for the employee unreviewable."
 
 
 35
 Furthermore, if the portion of 28 U.S.C. § 2679(d)(2) quoted above allowed a district court to remand a removed action on the ground that the Attorney General's certification was erroneous, this language would be essentially meaningless. The Attorney General's certification would not "conclusively establish scope of office or employment" for any purpose--not for purpose of trial or removal. The Attorney General's scope certification would simply provide a temporary basis for removal until the district court reviewed it. This would mean that a state case in which the Attorney General certified scope of employment and removed the case under 28 U.S.C. § 2679(d)(2) (1988) would be treated in essentially the same way as a state case in which the Attorney General refused to certify scope of employment but removed the case following an employee's petition for court certification under 28 U.S.C. § 2679(d)(3) (1988). We are convinced that the language of 28 U.S.C. § 2679(d)(2) (1988) was not intended to give the Attorney General's scope certification such a limited effect.[5]
 
 
 36
 C. In light of the statutory scheme set out above, we hold that review of the remand in this case is not barred by 28 U.S.C. § 1447(d) (1988). Just as the Supreme Court in Thermtron held that 28 U.S.C. § 1447(d) (1970) must be read together with 28 U.S.C. § 1447(c) (1970), we hold that 28 U.S.C. § 1447(d) (1988) must be read together with 28 U.S.C. § 2679(d)(2) (1988). This latter, subsequently enacted provision expresses Congress's intent that subject matter jurisdiction is conclusively established upon the Attorney General's certification. Since subject matter jurisdiction has been conclusively established, there is no jurisdictional question to be resolved by the district court. "Because the District Court remanded a properly removed case on grounds that he had no authority to consider, he exceeded his statutorily defined powers; and issuance of the writ of mandamus was not barred by § 1447(d)." Thermtron, 423 U.S. at 351, 96 S.Ct. at 593 (emphasis added).
 
 
 37
 The decision here stands in marked contrast to the normal jurisdictional decisions made in connection with remand. Normally, the district court will be called upon by the relevant statute to make a preliminary determination, such as whether there is complete diversity, that will in turn determine whether or not there is jurisdiction. In the present case, however, there is no preliminary determination for the district court to make. Thus the present case falls outside of the type of cases § 1447(d) was intended to cover. See In re TMI, 940 F.2d at 844 (noting that the constitutional decision at issue there was different from the normal remand decision (existence of diversity or a federal question) that involved reference to a well-established body of law); see also id. at 845-46 (discussing the jurisprudential concerns associated with the inability to review a constitutional decision).
 
 
 38
 It does not follow from our decision that anytime the district court misinterprets a jurisdictional statute we have authority to review the remand decision. See, e.g., Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). Such an exception would obviously swallow the rule. Here, however, Congress, by expressly stating that the Attorney General's certification is "conclusive" as to jurisdiction, has prohibited a district court from using its disagreement with the Attorney General's scope of employment certification to deny jurisdiction and so send the case back to the state court where it originated. Thus, our holding is limited to the narrow situation where the district court has relied on a factor in its jurisdictional analysis that Congress intended to exclude from consideration of the jurisdictional issue. Only in that narrow class of cases, in order to give meaning to the legislative prohibition against the district court's considering a particular factor in its jurisdictional analysis, can we imply congressional intent to authorize appellate review of a remand order.
 
 
 39
 For these reasons, we believe that we are not barred by 28 U.S.C. § 2679(d)(2) from reviewing the remand order in this case. Moreover, we believe that mandamus is appropriate to prevent a remand based on the prohibited ground on which the district court relied. See, e.g., Thermtron, 423 U.S. at 352-53, 96 S.Ct. at 593-94. In the words of the First Circuit in Nasuti v. Scannell, 906 F.2d 802, 811 (1st Cir.1990) (footnote omitted), "the district court's remand order was a departure so lacking in statutory basis, and so clearly contrary to Congressional policy as expressed in the Westfall Act, as to require our review by mandamus."[6]
 
 IV.
 
 40
 This brings us to the question whether the district court was correct in concluding that the originally named defendants were not acting within the scope of their employment when they allegedly defamed the plaintiffs. In our second opinion in Schrob, 967 F.2d at 934-36, which was handed down well after the district court's decision in this case, we explained the procedures that a district court should follow in deciding a question of this type. We wrote that the Attorney General's scope certification is prima facie evidence that the employee's challenged conduct fell within the scope of employment and that a plaintiff challenging the certification therefore has the burden of coming forward with specific facts rebutting it. Id. at 936. We added (id.):
 
 
 41
 If the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on the certification, pleadings, documentary evidence, and affidavits.... On the other hand, if there is a genuine issue of fact material to the scope of employment question, the district court should permit discovery and conduct a hearing, if necessary. But the district court should ensure that both the discovery and the hearing are circumscribed as narrowly as possible, although these are matters within its discretion.
 
 
 42
 From this discussion, it follows that our standard of review in an appeal concerning resubstitution must vary depending on the procedure that the district court follows. If the district court decides the question of scope of employment based on the pleadings or affidavits, we must apply the standard of review applicable to a dismissal under Fed.R.Civ.P. 12(b)(6) or 12(c) or the standard applicable to an order granting summary judgment. On the other hand, if the court decides disputed questions of material fact after conducting an evidentiary hearing, the court's findings must be accepted unless clearly erroneous. See Fed.R.Civ.P. 52(a). No matter which procedure the district court follows, however, the question whether an employee was acting within the scope of employment given a particular set of facts is a question of law subject to plenary review. Washington v. United States, 868 F.2d 332, 334 (9th Cir.), cert. denied, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 536 (1989). This legal question is one of state law. 28 U.S.C. § 1346(b) (1988); Schrob, 967 F.2d at 934. Thus, Pennsylvania law governs here.
 
 
 43
 In Butler v. Flo-Ron Vending Co., 383 Pa.Super. 633, 557 A.2d 730, 736, appeal denied, 523 Pa. 646, 567 A.2d 650 (1989), the Pennsylvania Superior Court adopted the general standard set forth in Restatement (Second) of Agency § 228 for determining whether an employee's conduct is within the scope of employment. In the absence of any contrary decisions or pronouncements by the Supreme Court of Pennsylvania, we predict that that court would follow this holding. See Northern Ins. Co. v. Aardvark Assoc., 942 F.2d 189, 193 (3d Cir.1991). Moreover, we will presume that the Supreme Court of Pennsylvania would also follow related provisions of the Restatement (Second) of Agency, including Section 247, which directly addresses an employer's liability for defamatory statements made by an employee.
 
 
 44
 Applying the standards set out above, we cannot sustain the decision of the district court. It is not entirely clear whether the district court employed a procedure analogous to summary judgment or whether it made findings regarding what it viewed as genuine issues of material fact. In any event, the district court did not discuss the facts relating to each of the individual defendants. Moreover, the court's short discussion appears to have been based on legally erroneous premises.
 
 
 45
 The court apparently reasoned that an employee's conduct cannot be within the scope of employment if the employer instructed the employee not to engage in that conduct. Thus, the district court observed that Medical Center employees could not have been acting within the scope of their employment in discussing the reason for Aliota's removal because the Medical Center director had instructed employees to refer all questions concerning this matter to him. This reasoning is directly contrary to the rule set out in Restatement (Second) of Agency § 230, which states: "An act, although forbidden, or done in a forbidden manner, may be within the scope of employment."In a similar vein, the district court apparently reasoned that Kathryn Fowells was not acting within the scope of her employment when she allegedly made defamatory statements about Aliota to Nies, a manufacturer's representative, because her job description called for her to provide "factual information" to such representatives. The court wrote (emphasis in original):
 
 
 46
 The allegations of this lawsuit do not state that [Fowells] passed on factual information. This case is a defamation action! Therefore, we conclude the alleged conduct of the individual defendants was not conduct that they were employed to perform.
 
 
 47
 This reasoning conflicts with Restatement (Second) of Agency § 230, which was discussed above. It also conflicts with comments to Restatement (Second) of Agency § 247, which deal specifically with defamation. One of these comments states:
 
 
 48
 If the master employs a servant to speak for him, he is subject to liability if the servant makes a mistake as to the truth of the words spoken or as to the justification for speaking them, or even if he speaks with an improper motive, provided that he acts at least in part to serve his employer's purposes. The master may be liable even though the servant knows the statement to be untrue....
 
 
 49
 Restatement (Second) of Agency § 247, cmt. c. See also id. cmt. a.[7]
 
 
 50
 In light of what we have said, we must vacate the decision of the district court. We will remand this case for a redetermination whether, in accordance with the procedures and standards we have set out, the originally named individual defendants were acting within the scope of their employment when they allegedly made defamatory statements.
 
 
 
 [1]
 Judicial Code of 1911, ch. 3, § 28, 36 Stat. 1094, 1095 (1911)
 
 
 [2]
 In addition, an order denying "a substantial claim of absolute immunity" is too important to be denied immediate review. Forsyth, 472 U.S. at 525, 105 S.Ct. at 2815
 
 
 [3]
 We note that our recent opinion in Schrob, 967 F.2d at 936, stated that "[i]n the event that a substitution is set aside, the defendant may probably appeal under the collateral order doctrine."
 
 
 [4]
 28 U.S.C. § 1447(c) (1988) now provides that a case must be remanded if "it appears that the district court lacks subject matter jurisdiction."
 
 
 [5]
 In Schrob v. Catterson, 967 F.2d 929, 934 n. 8 (3d Cir.1992), we stated, citing Snodgrass v. Jones, 957 F.2d 482, 484 (7th Cir.1992), that "it may well be that a case may be remanded to the state court if it is later determined that the employee had not been acting within the scope of employment." In Snodgrass, the action was first removed and then remanded to the state court prior to the enactment of the Westfall Act. See 957 F.2d at 484. The Attorney General then refused to certify scope of employment, but the employee petitioned for court certification, and the United States removed this petition to federal court under 28 U.S.C. § 2679(d)(3) (1988) (957 F.2d at 484). The district court then held that the employee was not acting within the scope of employment, and the court of appeals affirmed. In light of Snodgrass, our footnote in Schrob must be understood to mean that a removal case may be remanded when the Attorney General refuses to certify scope of employment, the removal occurs after the employee petitions for court certification, and the court holds that the employee was not acting within the scope of his or her employment
 
 
 [6]
 In Nasuti, the district court had remanded a removed case despite the Attorney General's scope certification without determining whether the individual defendants had in fact acted within the scope of their employment. The court of appeals held that this remand order was reviewable, but the court went on to state that review would not be available if the district court, prior to remanding the case, had determined that the employees had not been acting within the scope of their employment. For the reasons explained above, we disagree with this latter conclusion
 
 
 [7]
 This comment states:
 If the scope of employment of a servant includes the making of statements concerning others which he believes to be true and privileged, the master is subject to liability for untrue and unprivileged defamatory statements made by the servant concerning such others, if the statements are otherwise within the scope of the servant's employment.
 Restatement (Second) of Agency § 247, cmt. a.