**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN MICHAEL BORNEMAN,
Plaintiff-Appellee,

v.                                                    No. 99-1173

UNITED STATES OF AMERICA,
Defendant-Appellant.

JOHN MICHAEL BORNEMAN,
Plaintiff-Appellant,

v.                                                    No. 99-1479

UNITED STATES OF AMERICA,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, District Judge.
(CA-98-97-7-F)

In Re: UNITED STATES OF AMERICA;
RICHARD MCCAULEY,                                     No. 99-1982
Petitioners.

On Petition for Writ of Mandamus.
(CA-98-97-7-F)

Argued: February 28, 2000

Decided: May 30, 2000

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Williams and Judge Motz joined.

_____

## COUNSEL

**ARGUED:** Neil Irving Fowler, Assistant United States Attorney, Raleigh, North Carolina, for Appellant. James Kenneth Larrick, Wilmington, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellant.

_____

## OPINION

NIEMEYER, Circuit Judge:

In this appeal, we address whether John Borneman, a United States postal employee, may maintain a state common-law action against Richard McCauley, a fellow postal employee, for an assault and battery that allegedly occurred during work. Proceeding under the Westfall Act, the United States represented McCauley and removed this action to federal court, certifying that McCauley had acted within the scope of his employment and substituting the United States as the sole defendant. The United States then moved to dismiss the action because McCauley's conduct, as so imputed to the United States, was protected by sovereign immunity. Without resolving disputed facts, the district court concluded that the United States' certification and substitution were erroneous. The district court found that the removal to federal court was therefore improper and entered an order remanding the case to state court.

After addressing the complex question of whether we have jurisdiction to review the district court's rulings and concluding that we do, we vacate the district court's remand order, as well as its rulings that the United States' certification and substitution were erroneous, and we remand this case to the district court to resolve the factual question of whether McCauley's actions fell within the scope of his

2

employment. We affirm the district court's order denying Borneman his attorneys fees.

I

John Borneman, employed by the United States Postal Service as a rural route mail carrier, commenced this assault and battery action in state court in Wilmington, North Carolina, against a Postal Service manager, Richard McCauley, who, Borneman alleged, assaulted him during a dispute at work. In his complaint, Borneman, who also served as a union shop steward, alleged that on May 9, 1997, he and McCauley became engaged in a heated discussion about labor-management issues and Borneman's request for auxiliary help in his mail-sorting and delivery duties so that he could attend a meeting with a supervisor to discuss a grievance filed on behalf of fellow union members. Borneman felt that McCauley had wrongfully failed to procure the requested auxiliary help, and he informed McCauley that he wanted to file a grievance against McCauley related to this issue. Borneman alleged that McCauley then became angry and followed Borneman out of McCauley's office. Borneman further alleged that as he was walking away, McCauley "kicked[Borneman's] feet and pushed him from behind with his hand causing[Borneman] to fall forward onto the tile floor. [Borneman] fell on his right knee severely injuring it." Borneman asserted that he suffered a "fracture of the right ossicle as well as a lateral meniscal tear," which required surgery.

The United States, as McCauley's employer, undertook to represent McCauley and filed (1) a notice of removal to federal court pursuant to 28 U.S.C. §§ 1441, 1442, and 2679; (2) a certification made by the Attorney General through the Assistant United States Attorney for the Eastern District of North Carolina that, at the time of the alleged assault, McCauley "was acting within the scope of employment as an employee of the United States"; (3) a notice of the substitution of the United States as party defendant in lieu of McCauley; and (4) a motion to dismiss Borneman's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting sovereign immunity because the United States is not subject to suit under the Federal Tort Claims Act for the torts alleged by Borneman and, in any event, Borneman failed to exhaust administrative procedures.

Borneman opposed removal and moved to remand his suit to state court, arguing that McCauley had acted outside the scope of his employment in assaulting Borneman and that federal jurisdiction was therefore lacking. The government responded with the affidavit of McCauley, in which he asserted that he did not physically touch Borneman and that he did not cause Borneman's injury. According to McCauley, Borneman left McCauley's office, "walking backwards some distance from me," making obscene gestures and "cursing." McCauley stated that he ordered Borneman "to leave the building, turned and was walking back to my office when I heard a noise. I looked back and [Borneman] was on the floor. I never touched [Borneman], did not push him, and presume he tripped while walking backwards." Borneman responded with his own affidavit, alleging additional facts supporting his claims of assault and battery and challenging McCauley's description of the events as"simply untrue." Borneman attached to his affidavit a letter from his physician stating that in his opinion, "the greatest likelihood of mechanism of injury [to Borneman's knee] based on his pathology would be a forward fall," which tended to support Borneman's version of the facts.

Without a hearing and based on this record, the district court disposed of the United States' motion to dismiss the complaint and Borneman's motion to remand in an opinion and order dated October 15, 1998. The district court ruled that under the North Carolina law of respondeat superior, McCauley's actions, taken as alleged by Borneman in his complaint and affidavit, did not fall within the scope of McCauley's employment. The district court therefore concluded that the scope-of-employment certification by the Attorney General "was erroneous," that the substitution of the United States as the defendant "also was erroneous," and that removal of the action by the United States to federal court "was improper." The court determined accordingly that it lacked subject matter jurisdiction and remanded the case to state court, citing 28 U.S.C. § 1447(c) as the basis for its remand.

The United States filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), requesting an evidentiary hearing to resolve the factual dispute of whether "Manager Richard McCauley was acting within the scope of his employment when the alleged tortious action occurred." The United States maintained that

4

the court should not have resolved the factual dispute in Borneman's favor without an evidentiary hearing. The district court denied the motion on the grounds that 28 U.S.C. § 1447(d) prevented the court from reconsidering its earlier order.

Thereafter, Borneman filed a motion for an award of attorneys fees and costs in the amount of $6,273 because the position of the United States in removing this case "was not substantially justified." The district court denied this motion, concluding that the United States "did not act improvidently or in bad faith" in removing the suit.

The United States filed this appeal, challenging the district court's ruling that the United States' certification and substitution actions were erroneous based on an application of North Carolina principles of respondeat superior. The United States also filed a petition for a writ of mandamus, seeking review of the district court's order remanding the case to the state court. Borneman filed a cross-appeal, challenging the district court's decision not to award him attorneys fees.

II

We first address Borneman's contention that we lack jurisdiction to consider the United States' appeal and petition for mandamus relief. Borneman argues that the district court's order remanding the case to state court deprives this court of jurisdiction because, under 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Borneman maintains that § 1447(d) prohibits us from reviewing both the district court's remand order and its antecedent rulings rejecting the United States' certification and its substitution as the defendant under §§ 5 and 6 of the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("the Westfall Act"), 28 U.S.C. § 2679(b) & (d). As we have noted, the district court, relying on its conclusion that McCauley was not acting within the scope of his employment, ruled that the Attorney General's certification and the substitution of the United States as defendant was "erroneous," and that the removal to federal court was "improper." Concluding that it therefore lacked jurisdiction, the district court remanded the case to state court, citing 28 U.S.C. § 1447(c).

5

Section 1447(c) of Title 28 provides that a case removed to federal court must be remanded to state court if it appears that the federal court lacks subject matter jurisdiction:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

If a district court orders a remand based on § 1447(c), its order is not reviewable by a court of appeals by reason of 28 U.S.C. § 1447(d). Thus, while 28 U.S.C. §§ 1441, 1442, and 2679-- the sections relied upon by the United States in this case -- are among various statutes authorizing removal of state-filed cases to federal court, review by appeal, by mandamus, or otherwise is precluded under§ 1447(d) if the remand is based on one of the "grounds specified in § 1447(c)." Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127 (1995); Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 345-46 (1976). Whether a district court's remand order is reviewable under § 1447(d) is not determined by whether the order explicitly cites § 1447(c) or not. See Mangold v. Analytic Servs., Inc., 77 F.3d 1442, 1450 (4th Cir. 1996). The bar of § 1447(d) applies to any order invoking substantively one of the grounds specified in§ 1447(c). See id. at 1450-51.

In this case, the court did state that it was remanding the case for lack of jurisdiction, citing 28 U.S.C. § 1447(c). Therefore, if we are to accept this conclusion, § 1447(d) would, at first blush, appear to bar us from reviewing the district court's order. Unfortunately, in the circumstances presented, the task is not so straightforward. The district court's conclusion that it did not have subject matter jurisdiction was premised on two antecedent decisions that are both judicially reviewable and appealable: (1) that the United States' scope-of-employment certification was erroneous and (2) that the United States' substitution as defendant was erroneous. **1** If these antecedent

_____
**1 See Gutierrez de Martinez v. Lamagno**, 515 U.S. 417, 434 (1995) (holding that certification for purposes of substitution is judicially

6

components of the district court's remand order are reviewable, it follows that the remand order itself should become reviewable because its propriety depends on premises that are not statutorily barred from review, rather than on whether the federal jurisdictional requirements referenced in § 1447(c) are satisfied. See Mangold, 77 F.3d at 1453. And an otherwise reviewable ruling is not shielded from review merely because it is a constituent aspect of a remand order that would itself appear to be insulated from review by § 1447(d). See Waco v. United States Fidelity & Guar. Co., 293 U.S. 140, 143 (1934) (treating separately components of district court's order dismissing a party and remanding action); Mangold, 77 F.3d at 1446 (treating separately components of district court's order denying immunity and remanding action to state court).

But even if a remand order does not in this oblique manner become subject to review when its underlying premises are appealed, § 1447(d)'s restriction on appellate review of remand orders cannot be read categorically when other statutes in tension with it are considered. Removal by the United States in this case rested not only on §§ 1441 and 1442 but also on § 2679(d)(2), which provides that upon a scope-of-employment certification by the Attorney General, the state-court action "shall be removed" to federal court. Moreover, the statute provides that for purposes of removal , the certification is "conclusive[ ]." 28 U.S.C. § 2679(d)(2).

In Gutierrez de Martinez v. Lamagno, 515 U.S. 417 (1995), the Supreme Court held that the Attorney General's scope-of-employment certification made under § 2679(d)(2) serves two offices. It forms the basis for the United States to be substituted as defendant, a consequence that is subject to judicial review. See 515 U.S. at 434. It also conclusively establishes removal jurisdiction in the federal court, a consequence that is not judicially reviewable. See id. at 432 ("Congress made the Attorney General's certificate conclusive solely for purposes of removal, and notably not for purposes of substitu-

_____

reviewable); Jamison v. Wiley, 14 F.3d 222, 230 n.10, 233-34 (4th Cir. 1994) (holding that rejection of certification amounts to a denial of absolute immunity which is immediately appealable); Aliota v. Graham, 984 F.2d 1350, 1353-54 (3d Cir. 1993) (same); Mitchell v. Carson, 896 F.2d 128, 133 (5th Cir. 1990) (same).

7

tion."); see also Aliota v. Graham, 984 F.2d 1350, 1357 (3d Cir. 1993) ("Congress, by expressly stating that the Attorney General's certification is `conclusive' as to jurisdiction, has prohibited a district court from using its disagreement with the Attorney General's scope of employment certification to deny jurisdiction and so send the case back to the state court where it originated"). Thus, in § 2679(d)(2), Congress withdrew from judicial determination any review of the Attorney General's decision to remove a case and have it determined in a federal forum. As the Third Circuit stated in Aliota, "Since subject matter jurisdiction has been conclusively established, there is no jurisdictional question to be resolved by the district court." 984 F.2d at 1357. And any district court that attempts to review the propriety of the Attorney General's removal made under § 2679(d)(2) exceeds its statutory authority.

Thus, 28 U.S.C. § 2679(d)(2), which gives the Attorney General the exclusive authority to determine removal jurisdiction under the Westfall Act, comes into tension with 28 U.S.C.§ 1447(d), which reserves to a district court the exclusive authority to determine on a remand motion whether the jurisdictional statute justifying removal is satisfied. This tension can best be resolved by giving effect to the intent of each statute and preserving to the district court its exclusive authority under § 1447(d) over remand orders based on § 1447(c) except when Congress directs otherwise in a more specific situation, such as where Congress gives the Attorney General the exclusive power to decide whether to have a Westfall Act case tried in federal court. Stated otherwise, § 1447(d) typically precludes review of remands based on whether the requirements of federal jurisdiction have been satisfied, such as whether there is complete diversity, see Aliota, 984 F.2d at 1357, but Congress never"intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute," Thermtron, 423 U.S. at 351. Indeed, in Thermtron, the Supreme Court appears to have recognized an exception to § 1447(d)'s bar as follows:

> Because the District Judge remanded a properly removed case on grounds that he had no authority to consider, he

8

> exceeded his statutorily defined power; and issuance of the writ of mandamus was not barred by § 1447(d).

423 U.S. at 351. The Court thus left § 1447(d) typically applicable to bar review of "any order remanding a case on grounds permitted by the statute." Id. at 352 (emphasis added); see also Mangold, 77 F.3d at 1453; Aliota, 984 F.2d at 1357.

Accordingly, as Thermtron instructs, § 1447(d) prohibits review of district courts' determinations of whether jurisdictional statutes have been satisfied, not review of determinations where district courts exceed their jurisdictional authority. Because § 2679(d)(2) "conclusively" vests federal jurisdiction over a suit against a federal employee who the Attorney General has certified "was acting within the scope of his office or employment," a district court has no authority to remand a case removed pursuant to that section, and the bar of § 1447(d) does not preclude us from reviewing a remand order when the district court exceeds its authority.

Therefore, we hold (1) that 28 U.S.C. § 1447(d) interposes no bar to either our review of the district court's ruling that the Attorney General's scope-of-employment certification for the purpose of substitution under the Westfall Act was erroneous or our review of the consequent remand order entered in violation of 28 U.S.C. § 2679(d)(2) and (2) that we have authority to review such rulings either as appealable decisions under 28 U.S.C. § 1291 or on petition for a writ of mandamus. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 714 (1996) (finding remand order appealable final order because "[w]hen a district court remands a case to a state court, the district court disassociates itself from the case entirely, retaining nothing of the matter on the federal court's docket"); Thermtron, 423 U.S. at 351 (because the district court exceeded statutory authority, mandamus review was not barred by § 1447(d)); Shives v. CSX Transp., Inc., 151 F.3d 164, 167-68 (4th Cir. 1998) (recognizing review of remand order either under final judgment principle or under petition for writ of mandamus); cf. Mangold, 77 F.3d at 1453 (treating appeal of a remand order as a petition for a writ of mandamus).

III

This brings us to the merits of the district court's rulings that the United States' scope-of-employment certification was erroneous and

9

that, accordingly, the substitution of itself as party defendant was also erroneous. The district court reached these conclusions by applying the law of North Carolina, where the alleged assault and battery occurred, to the facts as asserted by Borneman in his complaint and affidavit and determining that "McCauley's tortious act was not committed in the scope of his employment." The United States' challenge to these rulings presents two questions: (1) whether the district court followed the proper procedure for reviewing a Westfall Act certification and (2) whether the district court properly applied the North Carolina law of respondeat superior -- questions that we now address.

A

In Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997), we stated that the plaintiff has the burden of persuasion "to refute the certification of scope of employment issued by the Attorney General and to prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment." See also Gutierrez de Martinez v. Drug Enforcement Administration, 111 F.3d 1148, 1153-55 (4th Cir. 1997). "If the plaintiff presents persuasive evidence refuting the certification," the burden shifts to the United States to "provide evidence and analysis to support its conclusion that the torts occurred within the scope of employment." Maron, 126 F.3d at 323; see also Gutierrez, 111 F.3d at 1155. To carry its burden, the plaintiff must submit "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Gutierrez, 111 F.3d at 1155.

Recognizing the "desirability of quickly resolving the scope-of-employment issue" because "immunity under the Westfall Act, like other forms of absolute and qualified immunity,`is an immunity from suit rather than a mere defense to liability,'" Gutierrez, 111 F.3d at 1154 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), we emphasized that "the district court should remain cognizant of the considerations weighing against protracted litigation under the Westfall Act," id. at 1155. Nevertheless, we recognized that this burden-shifting proof scheme would sometimes make it advisable for the trial court to permit limited discovery or conduct an evidentiary hearing to resolve competing factual claims concerning the scope-of-

10

employment issue. At all stages of the process, it is for the district court to weigh the sufficiency of the evidence, to determine whether genuine issues of fact exist, and ultimately to resolve these factual issues.

Once any factual issues are resolved, the district court must then proceed to "weigh the evidence on each side to determine whether the certification should stand." Gutierrez, 111 F.3d at 1155. In making this ultimate determination, the district court must apply the law of the state in which the alleged tort occurred to ascertain whether the federal employee was acting within the scope of his employment. See Maron, 126 F.3d at 323-24; Jamison v. Wiley , 14 F.3d 222, 237 (4th Cir. 1994).

In this case, the district court properly recognized that Borneman presented evidence refuting the United States' certification. The court referred to Borneman's complaint and his affidavit, reciting Borneman's version of the facts. But then, without discussing the facts presented by the United States in McCauley's affidavit, the court simply concluded that "McCauley's tortious act was not committed in the scope of his employment." Because the court never acknowledged the competing factual position presented by the United States, it overlooked its obligation to resolve disputed factual contentions. Rather, it accepted Borneman's contested allegations as true, thus failing to hold him to his burden of proof.

While the accounts of Borneman and McCauley are consistent in some respects, they differ on the central issue of this case. Borneman contends that McCauley pushed and tripped him, causing him to fall. McCauley denies that any physical contact occurred and claims that he had turned around and was returning to his office at the time he heard Borneman fall. Clearly, if McCauley's account of the incident were believed, there would be no basis for asserting that he had committed an intentional tort and no basis for finding that he had acted outside the scope of his employment. This critical discrepancy is therefore material to the court's determination. Nonetheless, the district court apparently took Borneman's allegations as true, rather than requiring him to "present[ ] persuasive evidence," Maron, 126 F.3d at 323, in support of the allegations and allowing McCauley and the

11

government to present contrary evidence, which would then be weighed by the court.

B

Even if Borneman's version of events, as stated in his complaint and alleged in his affidavit, is found to be controlling, it is not clear that McCauley acted outside the scope of his employment under North Carolina law. While it is true, as the district court recognized, that under the North Carolina law of respondeat superior, an intentional tort is "rarely considered to be within the scope of an employee's employment," Medlin v. Bass, 398 S.E.2d 460, 464 (N.C. 1990) (quotation marks and citation omitted), "rarely" does not mean "never." And in North Carolina, the scope-of-employment question is ordinarily one for the jury. See id. at 463; see also Robinson v. McAlhaney, 198 S.E. 647, 650 (N.C. 1938); Stanley v. Brooks, 436 S.E.2d 272, 274 (N.C. Ct. App. 1993); Edwards v. Akion , 279 S.E.2d 894, 900 (N.C. Ct. App. 1981); Evington v. Forbes, 742 F.2d 834, 836-37 (4th Cir. 1984) (recognizing North Carolina rule that close or doubtful scope-of-employment cases are submitted to the jury).

North Carolina case law discloses numerous instances in which the issue of whether an intentional assault by an employee was within the scope of employment so as to impose vicarious liability on the employer was determined to be a jury question. See, e.g., Clemmons v. Life Ins. Co. of Ga., 163 S.E.2d 761, 766 (N.C. 1968) (collection agent for insurance company threatened plaintiff with pistol when she was unable to pay premium); Munick v. Durham, 106 S.E. 665, 667 (N.C. 1921) (city employee assaulted plaintiff when he paid portion of his water bill in pennies); Carawan v. Tate , 280 S.E.2d 528, 531 (N.C. Ct. App. 1981), modified, 286 S.E.2d 99 (N.C. 1982) (parking lot attendant drew gun on plaintiff after plaintiff refused to pay parking fee); Edwards, 279 S.E.2d at 900 (sanitation worker grabbed and hit plaintiff after dispute about the manner in which the worker collected plaintiff's refuse). The principle that should govern this factual inquiry has been formulated in various ways by the North Carolina courts: whether the employee was "about his master's business or whether he stepped aside from his employment to commit a wrong prompted by a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own," see

12

Medlin, 398 S.E.2d at 463 (quotation marks and citation omitted); whether the employee acted "as a means or for the purpose of performing the work he was employed to do" or whether he "was advancing a completely personal objective," id. at 464; or whether an employee's act "was a means or method of doing that which he was employed to do" or whether he "departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do," Wegner v. Delly-Land Delicatessen, Inc., 153 S.E.2d 804, 808 (N.C. 1967). We do not intend by this discussion to suggest any particular result from the application of this principle to the facts of this case. We merely observe that the inquiry is fact-bound and may involve consideration of such factors as the degree to which the physical confrontation in this case, if one occurred, represented an escalation of a work-related dispute and the degree to which it was motivated by personal animosity.

C

Because we conclude that material factual issues exist with respect to both the existence of the alleged assault and its nature, we find that the district court's decision to reject the United States' scope-of-employment certification was premature. Borneman must be held to his burden of proof, and the district court must resolve the material factual issues. We therefore remand this case for proceedings consistent with the Maron/Gutierrez procedures outlined above.

Should the district court conclude, after resolving all material facts, that McCauley was not acting within the scope of his employment, McCauley must be resubstituted as the defendant in this case. But the district court may not thereafter remand the case to state court. Remand is precluded by the Attorney General's removal under 28 U.S.C. § 2679(d). Also the district court should not dismiss it.[2] The

_____

**2** We understand removal to be a forum selection procedure that of itself confers no jurisdiction. Rather, it depends on an independent ground for jurisdiction. Thus, when removal is conclusively allowed by 28 U.S.C. § 2679(d), remand is precluded, but the federal interest that serves as the basis for federal jurisdiction may be independently evaluated. In this case, federal jurisdiction is based on the fact that at the time of removal, a federal employee ostensibly in the scope of his employment with the United States was a party.

13

district court's jurisdiction on removal authorizes it to try the case even though the federal interest has been eliminated, and at that stage in the proceedings, it should exercise its jurisdiction and try the case, applying North Carolina law. The court will have already become exposed to the merits of the case in adjudicating the scope-of-federal-employment question, and, for reasons of judicial economy, convenience, and fairness to the parties, it should then proceed to final judgment. See Gutierrez, 515 U.S. at 435-36 (plurality opinion); cf. United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966). If, on the other hand, the district court concludes that McCauley was acting within the scope of his employment, he enjoys absolute immunity and the action becomes one against the United States under the Federal Tort Claims Act.**3**

IV

In light of our ruling on the merits and our belief, in any event, that the district court did not abuse its discretion in denying Borneman his attorneys fees, we affirm the district court's ruling in that regard.

V

In sum, we vacate the district court's remand order and its rulings finding erroneous the United States' certification and substitution. We affirm the district court's order denying Borneman's motion for attor-

_____

**3** The government moved for dismissal in the district court on the dual grounds that Borneman failed to satisfy the FTCA's administrative exhaustion requirement, see 28 U.S.C. § 2675(a), and that his claim is not cognizable under the FTCA, which specifically excludes any claim arising out of an assault or battery, see 28 U.S.C. § 2680(h); Talbert v. United States, 932 F.2d 1064, 1066 (4th Cir. 1991). However, once the United States is substituted as defendant, the FTCA may not apply at all if, as the record seems to indicate, Borneman's injuries were job-related injuries compensable under the Federal Employees Compensation Act (FECA). See 5 U.S.C. § 8102. In that case, FECA provides the exclusive remedy for a federal employee against the United States. See 5 U.S.C. § 8116(c); Wallace v. United States, 669 F.2d 947, 951 (4th Cir. 1982); see also Ezekiel v. Michel, 66 F.3d 894, 898-900 (7th Cir. 1995) (Westfall Act substitution makes FECA exclusive remedy); Sowell v. American Cyanamid Co., 888 F.2d 802, 804-05 (11th Cir. 1989) (same).

14

neys fees. And we remand this case to the district court for further proceedings in accordance with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

15