Filed:  May 5, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 96-1156
(CA-93-55-A)

---

Katia Gutierrez De Martinez, et al,

Plaintiffs - Appellants,

versus

Drug Enforcement Administration, et al,

Defendants - Appellees.

---

O R D E R

---

The Court amends its opinion filed April 24, 1997, as follows:

On page 5, first full paragraph, lines 6-9 -- The sentence is changed to read: "Both parties agree that the scope-of-employment question under the Westfall Act is one of law. Accordingly, we review the district court's ultimate resolution of the scope-of-employment question under a de novo standard."

On page 5, footnote 3 -- the note is changed to begin: "As discussed _infra_ at page 7-9, we review for clear error any

factual findings upon which the legal scope-of-employment deter-mination rests.  Moreover, this is a separate question . . . ."

For the Court - By Direction


/s/ Patricia S. Connor
_____
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KATIA GUTIERREZ DEMARTINEZ;
EDUARDO MARTINEZ PUCCINI; HENRY
MARTINEZ DEPAPAIANI,
Plaintiffs-Appellants,

v.

DRUG ENFORCEMENT ADMINISTRATION;

No. 96-1156

UNITED STATESOF AMERICA,
Defendants-Appellees,

and

DIRK A. LAMAGNO,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-93-55-A)

Argued: January 29, 1997

Decided: April 24, 1997

Before HAMILTON, WILLIAMS, and MICHAEL,
Circuit Judges.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Judge Hamilton and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Isidoro Rodriguez, LAW OFFICE OF ISIDORO RODRI-
GUEZ, Barranquilla, Colombia, for Appellants. Rachel Celia Ballow,

Assistant United States Attorney, Alexandria, Virginia, for Appellees. **ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellees.

WILLIAMS, Circuit Judge:

Katia Gutierrez de Martinez, Eduardo Martinez Puccini, and Henny Martinez de Papaiani (Appellants) appeal from the district court's conclusion that Drug Enforcement Agency (DEA) Special Agent Dirk A. Lamagno was acting within the scope of his federal employment when his vehicle collided with that of Appellants. After reviewing the scope-of-employment certification issued by the Attorney General's designate on behalf of Lamagno, the district court dismissed Lamagno, substituted the United States as the proper defendant, see 28 U.S.C.A. § 2679(d)(1) (West 1994), and dismissed the action against the United States for lack of subject-matter jurisdiction, see 28 U.S.C.A. § 2680(k) (West 1994). Prior to this case, we have not allowed review of scope-of-employment certifications, thus we must first consider the appropriate standards under which this review is to be conducted. Because we conclude that the district court followed the correct review procedure and reached the right result, we affirm.

I.

After leaving a restaurant in Barranquilla, Colombia, on the evening of January 18, 1991, Lamagno was driving his government-issued Ford Bronco when he collided with a car driven by Gutierrez de Martinez. Gutierrez de Martinez and her passengers, Martinez Puccini and Martinez de Papaiani, were injured. The undisputed facts are that Lamagno had a female passenger; that the restaurant was only two blocks from the hotel where Lamagno was staying; that the accident occurred more than 20 blocks from either the hotel or the restaurant; that at the time of the accident, Lamagno was driving in the opposite direction from the hotel; and that Lamagno had been drinking.

The parties differ, however, in explaining these facts. Lamagno claims that he and Julia Bermann, an intelligence analyst with the DEA, were attending a DEA office dinner where official business was discussed. After the meeting and in accordance with DEA policy that

2

female agents not travel alone after dark, Lamagno was assigned to escort Bermann to the hotel where both were staying. Lamagno and Bermann assert that they became lost in the unfamiliar streets of Barranquilla. He further maintains that although he had been drinking, he was not intoxicated at the time of the accident. Appellants, on the other hand, claim that the restaurant was a "DEA hangout" and that Lamagno drank alcohol there before leaving with "an unidentified thin Hispanic looking woman with long black hair." (Appellant's Br. at 4.) They also claim that Lamagno violated local traffic laws by driving recklessly and by ignoring the right-of-way, that there was no DEA policy requiring females to be accompanied after dark, and that Lamagno's passenger was not a federal employee.

Based on these allegations, on January 16, 1993, Appellants filed a common-law tort action, invoking diversity jurisdiction, in the District Court for the Eastern District of Virginia against Lamagno, the DEA, and the United States.[1] The United States Attorney for that district issued a one paragraph scope-of-employment certification for Lamagno on March 4, 1993, stating that Lamagno was acting within the scope of his employment as a DEA agent when the accident occurred. The district court, relying on Johnson v. Carter, 983 F.2d 1316 (4th Cir. 1993) (en banc), held that the certification was conclusive and unreviewable. Accordingly, on March 5, 1993, the district court dismissed Lamagno and substituted the United States in his place. See 28 U.S.C.A. § 2679(d)(1) (West 1994). Thereafter, the district court dismissed the United States for lack of subject-matter jurisdiction under the foreign claims exception to the Federal Tort Claims Act (FTCA). See 28 U.S.C.A. § 2680(k) (West 1994).

This court, also relying on Johnson, agreed that the certification was unreviewable and therefore affirmed. See Gutierrez de Martinez v. Lamagno, 23 F.3d 402 (4th Cir. 1994) (per curiam) (unpublished). Recognizing that the Circuits were split, the Supreme Court granted certiorari, reversed, and remanded the case to this court for further

_____

1 Appellants, prevented from filing suit in Colombia because of diplomatic immunity, also filed an administrative claim with the DEA on May 8, 1991. They sought relief under 21 U.S.C.A. § 904 (West 1994), which provides a discretionary remedy for torts that arise from DEA operations in a foreign country. This claim is still pending.

proceedings.[2] See Gutierrez de Martinez v. Lamagno, 115 S. Ct. 2227, 2237 (1995). We remanded the case to the district court. When the district court reopened the case, the United States Attorney for the Eastern District of Virginia refiled the certification that Lamagno was acting within the scope of his employment. Later, Appellants requested limited discovery and an evidentiary hearing. The United States submitted a memorandum in opposition, requesting an in camera judicial determination of the challenge to the scope-of-employment certification. Thereafter, the district court ordered the parties to submit briefs, affidavits, and documentary evidence on the issue of Lamagno's scope of employment. Appellants moved to file a second amended complaint, and the United States filed a motion to substitute itself for Lamagno, see 28 U.S.C.A. § 2679(d)(1), and to dismiss the claim against the United States, see 28 U.S.C.A. § 2680(k).

After considering the parties' briefs and numerous submissions, and after hearing argument by counsel for both parties, the district court ruled that additional discovery would not develop any facts material to the scope-of-employment question. The district court then upheld the scope-of-employment certification, again substituted the United States for Lamagno, and dismissed the action against the United States. Appellants appeal only the scope-of-employment decision, conceding that an action against the United States is barred by the foreign claims exception to the FTCA.

II.

In response to Westfall v. Erwin, 484 U.S. 292 (1988), which held that federal employees could claim absolute immunity from state-law tort actions only if their conduct was "within the outer perimeter of an official's duties and . . . discretionary in nature," id. at 300, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act of 1988, see Pub. L. No. 100-694, §§ 5-6, 102 Stat. 4564 (codified at 28 U.S.C.A. § 2679 (West 1994)) (commonly called

_____

[2] The Supreme Court left intact our dismissal of Appellants' "headquarters" claim for negligence by the DEA and 42 U.S.C.A. § 1981 (West 1980) claim for discriminatory acts by the DEA. Therefore, these claims are not at issue here.

4

the Westfall Act). In addition to rejecting the specific holding of Westfall, the Westfall Act provided:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C.A. § 2679(d)(1). By regulation, the United States Attorneys are authorized to issue certifications on behalf of the Attorney General. See 28 C.F.R. § 15.3(a) (1996). As noted above, we have previously declined to review certifications issued under the Westfall Act. See Johnson v. Carter, 983 F.2d 1316 (4th Cir. 1993) (en banc). However, in light of the Supreme Court's decision in Gutierrez de Martinez v. Lamagno, 115 S. Ct. 2227 (1995), this position is no longer tenable.

The fundamental question on appeal, then, is the propriety of the district court's conclusion on remand that Lamagno was acting within the scope of his employment at the time of the accident. Because we have not previously allowed the review of scope-of-employment certifications, it is necessary to determine the correct standards to apply. Both parties agree that the scope-of-employment question under the Westfall Act is one of law. Accordingly, we review the district court's ultimate resolution of the scope of employment questions under a de novo standard.[3] See Lawson v. United States, 103 F.3d 59, 60 (8th Cir. 1996) (stating that the appellate court "review[s] the scope-of-employment determination de novo"); Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996) (noting, in a Westfall Act case, that "[w]e review the district court's scope of employment determination

_____

[3] As discussed infra at pages 7-9, we review for clear error any factual findings upon which the legal scope-of-employment determination rests. Moreover, this is a separate question from the standard under which the certification itself is to be reviewed. Here, we note only that review of the district court's scope-of-employment determination is de novo; we consider the underlying question -- under what standard the certification is reviewed in the first instance -- infra at pages 8-13.

5

de novo"); Coleman v. United States, 91 F.3d 820, 823 (6th Cir. 1996) (stating that a scope-of-employment certification is "reviewable . . . on the appellate level as a question of law under a de novo standard").

The Westfall Act, in conjunction with the FTCA, makes clear that a plaintiff seeking relief against a federal employee is not entitled to a jury trial on the scope-of-employment issue, even if the relevant state law would provide a jury trial. See Brown v. Armstrong, 949 F.2d 1007, 1011-12 (8th Cir. 1991) (rejecting plaintiff's claim that a jury trial was required on scope-of-employment question). Under the Westfall Act, "[u]pon certification, any action or proceeding subject to [28 U.S.C.A. § 2679(d)(1), (d)(2), or (d)(3)] shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions." 28 U.S.C.A. § 2679(d)(4); see also 28 U.S.C.A. § 1346(b) (West 1993). One of the "limitations and exceptions" applicable to a suit under § 1346(b) is that "[a]ny action against the United States under section 1346 shall be tried without a jury." 28 U.S.C.A. § 2402 (West 1994). Because the possible liability of the United States turns in principal part upon the resolution of the scope-of-employment question, and because suits against the government are not "suits at common law" as contemplated by the Seventh Amendment, the denial of the right to a jury trial under the Westfall Act, like the denial of a jury trial under the FTCA, does not offend the Seventh Amendment. See U.S. Const. Amend. VII; see also Salmon v. Schwarz, 948 F.2d 1131, 1142 (10th Cir. 1991) (observing that "[t]he denial of a jury trial under the FTCA does not run afoul of the Seventh Amendment"); cf. McElrath v. United States, 102 U.S. 426, 440 (1880) (suits against the government in the Court of Claims are not "suits at common law" under the Seventh Amendment). Therefore, the district court may resolve disputed issues of fact in considering a challenge to a scope-of-employment certification. If the district court does resolve disputed issues of fact, we review these factual findings for clear error. See Billings v. United States, 57 F.3d 797, 800 (9th Cir. 1995) (noting, in a Westfall Act case, that the court "review[s] the relevant district court's findings of disputed fact for clear error"); Green v. Hall, 8 F.3d 695, 698 (9th Cir. 1993) (explaining that "[w]here facts relevant to [the scope-of-employment] inquiry are in dispute, . . . we review the district court's factual findings for clear error").

6

The remaining question, then, is the procedure by which the district court is to review the Attorney General's certification.**4** Courts that have considered the issue, including those that allowed review of scope-of-employment certifications before the Supreme Court's decision in this case, have fashioned a fairly uniform body of law governing review at the district court level. The Attorney General's certification is conclusive unless challenged. See Billings, 57 F.3d at 800. When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment. See Palmer v. Flaggman, 93 F.3d 196, 198-99 (5th Cir. 1996) (stating that "the burden of proof lies with the plaintiff to show that the Attorney General's initial decision was incorrect" (footnote omitted)); Coleman, 91 F.3d at 823 (stating that "the Attorney General's certification provides prima facie evidence that an employee's conduct is within the scope of employment"); Flohr v. Mackovjak, 84 F.3d 386, 390 (11th Cir. 1996) (stating that "the Attorney General's certification is prima facie evidence that the employee acted within the scope of his employment"); Anthony v. Runyon, 76 F.3d 210, 213, 215 (8th Cir. 1996) (noting that "Westfall certification acts as prima facie evidence that the defendants were acting within the scope of their employment," and that after certification, "plaintiffs have the burden of coming forward with specific evidence in rebuttal" (internal quotation marks omitted)); see also Billings, 57 F.3d at 800 (holding that "[c]ertification by the Attorney General is prima facie evidence that a federal employee was acting in the scope of her employment"); Kimbro v. Velten, 30 F.3d 1501, 1509 (D.C. Cir. 1994) (explicitly agreeing with the Third Circuit's view that a certification is "entitled to `prima facie' effect" and "obliges the plaintiff to come forward after reasonable discovery with evidence supporting his allegations both as to scope and as to the merits" (citations omitted)); Schrob v. Catterson, 967 F.2d 929, 935 (3d Cir. 1992)

_____

**4** Because Appellants filed the action in federal court on the basis of diversity jurisdiction, this is not a case where removal is an issue. See 28 U.S.C.A. § 2679(d)(2) (West 1994). Moreover, because the Attorney General's designate did in fact issue a scope-of-employment certification, this case does not involve a petition by the defendant federal employee for certification by the district court. See 28 U.S.C.A. § 2679(d)(3) (West 1994).

7

(explaining that the Attorney General's scope-of-employment "certification, although subject to judicial review, is <u>prima facie</u> evidence that the employee's challenged conduct was within the scope of employment," and requiring that the plaintiff "come forward with specific facts rebutting the certification"); <u>Hamrick v. Franklin</u>, 931 F.2d 1209, 1211 (7th Cir. 1991) (holding that "the plaintiffs have the burden of showing that the defendants' conduct was not within the scope of employment"). In assessing whether the plaintiff has rebutted the prima facie case, however, the district court should not defer to the Attorney General's certification, but should instead review the question de novo. <u>See Palmer</u>, 93 F.3d at 198-99 (stating that it gave "no judicial deference to the Attorney General's findings"); <u>Anthony</u>, 76 F.3d at 213 (stating that "the district court must independently review the case and determine whether the defendant was in fact acting within the scope of his or her employment"); <u>see also Kimbro</u>, 30 F.3d at 1509 (noting that the certification has no "particular evidentiary weight"); <u>Schrob</u>, 967 F.2d at 936 n.13 (explaining that deference to the certification "is not justified, for the certification should be reviewed <u>de novo</u> by the district court"); <u>Meridian Int'l Logistics, Inc. v. United States</u>, 939 F.2d 740, 745 (9th Cir. 1991) (concluding, in asking "what level of deference the district court should afford the certification," that review of the certification is "de novo"); <u>Hamrick</u>, 931 F.2d at 1211 (holding that the district court should engage in a "<u>de novo</u> review to determine whether the certification was proper"); <u>S.J. & W. Ranch, Inc. v. Lehtinen</u>, 913 F.2d 1538, 1543 (11th Cir. 1990) (noting that "the Attorney General's scope certification does not warrant judicial deference"), <u>amended on other grounds</u>, 924 F.2d 1555 (11th Cir. 1991); <u>Nasuti v. Scannell</u>, 906 F.2d 802, 813 (1st Cir. 1990) (holding that, for substitution purposes, the scope-of-employment question must "be independently resolved by the court").**5**

---

**5** We note that giving no deference to the scope-of-employment certification for substitution purposes does not render the certification a nullity. The certification "shall conclusively establish scope of office or employment for purposes of removal," <u>see</u> 28 U.S.C.A. § 2679(d)(2), thereby ensuring that the scope-of-employment determination is made in a federal tribunal without burdening the defendant federal employee with a jury trial. Moreover, the scope-of-employment certification places the burden of proof on the plaintiff, thereby requiring the plaintiff to come forward with evidence to prove that the defendant federal employee was acting outside the scope of his employment. Therefore, the certification is given effect, albeit a more limited one than we held prior to the Supreme Court's decision in this case.

8

Finally, we recognize that immunity under the Westfall Act, like other forms of absolute and qualified immunity, "is an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (discussing qualified immunity); see also Jamison v. Wiley, 14 F.3d 222, 227 (4th Cir. 1994) (noting that the Westfall Act gave "federal employees an absolute immunity from common law tort actions that was functionally equivalent to -- if not perfectly congruent with -- the immunity that they had enjoyed under the common law"); Schrob, 967 F.2d at 935 (recognizing "Congress' intent to `protect federal employees from the uncertain and intimidating task of defending suits that challenge conduct within the scope of their employ'" (quoting Brown v. Armstrong, 949 F.2d 1007, 1011 (8th Cir. 1991))). Accordingly, in light of the recognized desirability of quickly resolving the scope-of-employment issue, we agree with those courts that have held that "the district court should ensure that both the discovery and [any evidentiary hearings] are circumscribed as narrowly as possible, although these are matters within its discretion." Schrob, 967 F.2d at 936; see also Brown, 949 F.2d at 1012 ("[C]hallenges to the Attorney General's certification must be resolved before trial, as soon after the motion for substitution as practicable, even if an evidentiary hearing is needed to resolve relevant fact disputes."). Therefore, the district court may allow (in its discretion) limited discovery or conduct an evidentiary hearing, but should not do so if the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal an issue of material fact. It is for the district court to assess the sufficiency of the evidence produced by the plaintiffs. Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing.

In short, the scope-of-employment certification is prima facie evidence that the defendant federal employee acted within the scope of his employment, thereby placing the burden on the plaintiff to prove otherwise. If the plaintiff does not come forward with any evidence, the certification is conclusive. Moreover, the plaintiff's submission must be specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation. If the plaintiff's evidence is sufficient to carry the burden of proof, the defendant federal

9

employee or the Government may come forward with evidence in support of the certification. At this point, the district court may permit (and limit) any needed discovery. Thereafter, the district court must determine whether there are any genuine issues of fact material to the scope-of-employment decision, and, if so, it may conduct an evidentiary hearing to resolve these factual issues. Once any factual issues are resolved, the district court should weigh the evidence on each side to determine whether the certification should stand. During this process, the district court should remain cognizant of the considerations weighing against protracted litigation under the Westfall Act.

III.

We turn now to the application of these principles to the scope-of-employment certification at hand. Appellants first argue that the district court should have allowed discovery and an evidentiary hearing before dismissing the action against Lamagno. In their view, additional discovery would have afforded them an opportunity to depose Lamagno and Bermann, thereby exposing possible inconsistencies in their stories. They do not point, however, to any specific evidence that could be uncovered by further discovery beyond the speculative possibility of inconsistency.

We review the district court's discovery decisions for abuse of discretion. See Jamison v. Wiley, 14 F.3d 222, 236 (4th Cir. 1994) (holding that "the district court did not abuse its discretion in holding an evidentiary hearing on the scope-of-employment issue"); Schrob v. Catterson, 967 F.2d 929, 936 (3d Cir. 1992) (noting, in an action under the Westfall Act, that pretrial discovery decisions "are matters within [the trial court's] discretion"). Under this standard, we affirm the district court's refusal to allow additional discovery and an evidentiary hearing.

The district court, properly balancing "the need for a meaningful review of the scope certification with the need to protect federal employees from burdensome discovery," Schrob, 967 F.2d at 936, concluded "that the material facts relating to the scope of employment issue are not in dispute and that additional discovery would not develop any additional facts" (J.A. at 89). The district court reached this conclusion after reviewing numerous affidavits and after specifi-

10

cally asking Appellants to identify any material factual disputes. Other courts, faced with similar circumstances, have refused to require discovery and an evidentiary hearing. See Anthony v. Runyon, 76 F.3d 210, 214 (8th Cir. 1996) ("Although we have indicated that it may be necessary for the court to conduct an evidentiary hearing to resolve the scope-of-employment issue, a hearing is not required in every case." (citations omitted)); Woods v. McGuire, 954 F.2d 388, 391 (6th Cir. 1992) (affirming, under abuse of discretion standard, district court's refusal to allow further discovery before substitution and dismissal); Forrest City Mach. Works, Inc. v. United States, 953 F.2d 1086, 1088 (8th Cir. 1992) (holding that, when plaintiffs present no specific evidence contradicting the scope-of-employment certification, discovery before dismissal is unnecessary). Because every factual issue pressed by Appellants is adequately addressed in Lamagno's supporting affidavits, the district court rightly reviewed the certification without allowing discovery or conducting an evidentiary hearing.

IV.

The question remains: Did the district court properly conclude that Lamagno was acting within the scope of his employment at the time of the accident? In answering this question, we apply the law of the state where the conduct occurred. See Jamison v. Wiley, 14 F.3d 222, 227 n.2 (4th Cir. 1994) (noting "that whether particular conduct was `within the scope of employment' for purposes of Westfall Act immunity was to be determined not by reference to a uniform body of federal common law, but by reference to the respondeat superior law of the state in which the conduct occurred"); see also Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) (collecting cases); cf. Williams v. United States, 350 U.S. 857 (1955) (per curiam). Here, although the conduct at issue took place in Colombia, the parties have agreed to the application of the law of the forum state, Virginia.**6**

_____

**6** Lamagno acknowledges that "[t]his case presents a novel twist" because of the choice-of-law issues. (Appellee's Br. at 9 n.7.) According to Lamagno, this difficulty explains in part the foreign claims exception to the FTCA. Here, the law governing the underlying tort is not in issue. Accordingly, that choice-of-law issue need not be resolved -- the parties' stipulation to Virginia law is only for purposes of the scope-of-employment issue.

11

Under Virginia law, an employee acts within the scope of his employment if:

> (1)[The act] was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2)it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, "and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account."

Kensington Assocs. v. West, 362 S.E.2d 900, 901 (Va. 1987) (quoting Broaddus v. Standard Drug Co., 179 S.E.2d 497, 503-04 (Va. 1971)) (second alteration in original); see also Johnson v. Carter, 983 F.2d 1316, 1330 (4th Cir. 1993) (en banc) (noting that, under Virginia law, the conduct "must be fairly and naturally incident to the employer's business, be done while the employee was engaged in the employer's business, and be done with a view to further the employer's interests"), overruled on other grounds by Gutierrez de Martinez v. Lamagno, 115 S. Ct. 2227 (1995). For the most part, Virginia courts take a fairly broad view of scope of employment, and hold that even intentional torts may be within the scope of employment. See Plummer v. Center Psychiatrists, Ltd., 476 S.E.2d 172, 174-75 (Va. 1996) (concluding that a psychiatrist who sexually assaulted a patient may have acted within the scope of his employment); Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc., 453 S.E.2d 261, 266 (Va. 1995) (holding that "willful and malicious acts" that were "outrageous and violative of [the] employer's rules" might nonetheless be within the scope of employment). There are, however, limits. For example, in Smith v. Landmark Communications, Inc., 431 S.E.2d 306 (Va. 1993), the court held that a paper carrier was acting outside the scope of his employment while riding his bicycle from his home to the location where he picked up the newspapers to be delivered. In the court's view, "[t]he mere act of traveling to work was not a natural incident of [the employer's] business and, thus, it did not place [the paper carrier's] actions within the scope of the employment relationship." Id. at 308. Similarly, in Kensington Assocs., 362 S.E.2d at 903-04, the court concluded that a security guard acted outside the scope of his

12

employment when he accidentally shot a co-worker during "horse-play." The court found it significant that the employee "engaged in horseplay in an attempt to scare [a co-worker] when he injured [the plaintiff]. In addition, [the employee] had been drinking at the time, which [the employer] strictly prohibited." Id. at 903.

Here, whether Lamagno had been attending an official dinner or not, his act of accompanying Bermann to the hotel "was expressly or impliedly directed by the employer," id. at 901, provided that there was a DEA policy requiring that female agents be accompanied after dark. On this point, Appellants argue only that the purported DEA policy did not exist. Based on our review of the record, the proffered evidence does not support this argument. Eli Madrid, who served as the Resident Agent in Charge of the DEA Office in Barranquilla at the time of the accident, submitted an affidavit stating that "[b]ecause of the . . . high crime rate in Barranquilla, I had instituted a policy wherein all female employees would be escorted at all times after dark." (J.A. at 53.) Similarly, Calvin G. McFarland, who served as Chairman of the DEA Board of Professional Conduct that investi-gated Lamagno's accident, submitted an affidavit stating that "La-magno was specifically requested to transport another DEA employee, an Intelligence Analyst on temporary duty in Colombia, to the hotel as well." (J.A. at 60.) Lamagno and Bermann corroborated the existence of the disputed DEA policy in their own affidavits. On the other hand, Appellants have presented no evidence to refute the existence of this policy. At oral argument, counsel for Appellants argued that the policy was "unlikely" because it was "sexist" and "old-fashioned." Despite this speculation, we agree with the district court that Appellants have failed to create a genuine issue of fact material to the policy's existence. We therefore conclude, like the dis-trict court, that Lamagno was acting pursuant to DEA policy when the accident occurred, and that therefore his actions satisfy the first ele-ment of the Kensington test.[7]

---

[7] This case is readily distinguishable from Smith v. Landmark Commu-nications, Inc., 431 S.E.2d 306 (Va. 1993). Smith held only that transpor-tation to and from work is ordinarily outside the scope of employment. Here, however, Lamagno claims that DEA policy required that female agents be accompanied while traveling at night and that he was carrying out this duty by escorting Bermann to her hotel. (J.A. at 49.) It is this policy that places Lamagno's actions within the scope of his employ-ment.

13

Appellants further argue that, because Lamagno was intoxicated, his actions arose "wholly from some external, independent, and personal motive" on his part, see Kensington Assocs., 362 S.E.2d at 901, and therefore could not have been within the scope of his employment. In other words, Appellants argue that even if Lamagno's actions satisfy the first element of the Kensington test, they fail the second. We conclude that the district court rightly rejected this argument. Appellants rely on two affidavits to argue that Lamagno was intoxicated. We believe these affidavits are insufficient to raise a genuine issue of material fact. In the first of these two affidavits, Teresa de Rueda, who witnessed the accident, stated that Lamagno and Bermann "showed signs of drunkenness (i.e. slow and unsteady movements)." (J.A. at 25.) Similarly, in the second of these affidavits Appellant Martinez de Papaiani claimed that he saw Lamagno after the accident "with a strong breath of alcohol, and moving as [if] he [were] drunk." (J.A. at 35.) On the other hand, Madrid stated in his affidavit, "I spent well over an hour with S/A [Special Agent] Lamagno at the scene of the accident. During that time, I spoke with him at length and observed his actions. S/A Lamagno did not appear to be under the influence of alcohol or impaired in any other way when I observed him and spoke with him at the scene of the accident." (J.A. at 53-54.) Similarly, both Lamagno and Bermann denied that they were intoxicated when the accident occurred. After reviewing these affidavits, we agree with the district court that Appellants failed to present evidence inconsistent with Lamagno's position and failed to forecast the likelihood of discovering such evidence. Because Lamagno had just been involved in a serious accident, it is hardly surprising that his movements were "slow" and "unsteady." Moreover, Lamagno admitted that he had been drinking at the restaurant. Therefore, the claim that his breath smelled of alcohol does not contradict his version of events. Furthermore, the police accident report, prepared after Colombia police interviewed witnesses at the scene, makes no mention of alcohol playing a role in the accident.

Having concluded that the district court correctly found that Appellants failed to present sufficient evidence to show that Lamagno was intoxicated, we must consider whether, under Virginia law, the fact that he had been drinking alcohol rendered his acts beyond the scope of his employment. As noted above, the court in Kensington rejected a claim of respondeat superior liability because, among other things,

14

the employee "had been drinking at the time, which [the employer] strictly prohibited." 382 S.E.2d at 903. <u>Kensington</u>, however, does not support Appellants' argument that drinking alcohol by itself is sufficient to defeat the employment relationship. First, the employee's consumption of alcohol was only one factor mentioned by the <u>Kensington</u> court in concluding that the employee acted outside the scope of his employment. The court found it more significant that the employee "engaged in horseplay in an attempt to scare [a co-worker] when he injured [the plaintiff]," and that "[n]either the `horseplay' nor the resulting shooting was done to further Kensington's interests, but arose wholly from an independent, external, and personal motive on [the employee's] part to perform an act upon his own account." <u>Id.</u> Therefore, this case differs from <u>Kensington</u> in that Lamagno was not acting "wholly from an independent, external, and personal motive," but was instead attempting to further his employer's interests by observing a DEA policy. Second, the <u>Kensington</u> court specifically noted twice that the employer strictly prohibited drinking on the job. <u>See id.</u> at 901 (noting that "drinking while on duty was prohibited by" the employer); <u>id.</u> at 903 (stating that the employer "strictly prohibited" drinking on duty). Here, the record is silent as to any DEA policy prohibiting employees from drinking while performing acts within the scope of their employment.

We, therefore, conclude that <u>Kensington</u> does not mean that an employee always acts outside the scope of his employment merely by consuming alcohol. Moreover, after reviewing general Virginia respondeat superior law, we are convinced that Virginia courts would reject the argument that consumption of alcohol vitiates the employment relationship. As noted above, the Virginia courts generally take a broad view of the employment relationship, and have held that even intentional torts may be within the scope of employment. <u>See</u> <u>Plummer</u>, 476 S.E.2d at 174-75; <u>Commercial Bus. Sys., Inc.</u>, 453 S.E.2d at 266. It would be odd indeed to recognize that an intentional sexual assault could be within the scope of employment, <u>see</u> <u>Plummer</u>, 476 S.E.2d at 174-75, while also holding that the consumption of alcohol rendered all subsequent acts necessarily outside the scope of employment. We therefore conclude that, applying Virginia law, drinking alcohol by itself does not remove the employee from the scope of his employment.

15

There remain only Appellant's allegations that Lamagno was over 20 blocks away from his hotel and was accompanied by an unidentified Hispanic female. These allegations, however, cannot defeat Lamagno's assertions that he was lost, that the unidentified female was DEA Agent Bermann, and that his distance from the hotel was due to his unfamiliarity with the area. Again, Appellants present no evidence inconsistent with this version of events, and we agree with the district court that "there is insufficient evidence on which to set aside the United States Attorney's certification." (J.A. at 91.)

V.

In conclusion, we hold that a scope-of-employment certification produced under the Westfall Act is prima facie evidence that the defendant federal employee acted within the scope of his employment, and that it places the burden on the plaintiff to prove otherwise. Appellants's allegations and assumptions are no basis upon which to set aside the scope-of-employment certification, and the district court did not err in denying Appellants' request for additional discovery and an evidentiary hearing. Accordingly, we affirm the district court's conclusion that Lamagno was acting within the scope of his employment when the accident occurred. The motion to substitute the United States for Lamagno was properly granted.

AFFIRMED

16