Debra BRITTINGHAM, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 97–875–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 11, 1997.

Jacqueline E. Bennett, Hudgins Carter & Coleman, Alexandria, VA, for Plaintiff.

Helen F. Fahey, U.S. Atty., Leslie B. McClendon, Asst. U.S. Atty., Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff, a federal employee, filed a personal injury tort suit against a fellow employee in state court. The action was removed to federal court when the United States was substituted for the fellow employee based on the government's certification that at the time and place alleged, the putative tortfeasor was acting within the scope of his employment. The government seeks dismissal on the ground that plaintiff has not complied with the requirements of the Federal Tort Claims Act ("FTCA"), which applies now that the United States is the substituted defendant. For the reasons that follow, dismissal is required.

### I.[1]

The pertinent events occurred during normal business hours on August 12, 1996, at the United States Patent and Trademark Office ("PTO") in Arlington, Virginia. All persons involved were PTO employees. Plaintiff Debra Brittingham and Manuel Mendez were Patent Examiners. The original defendant, Randall Green, was a Supervisory Patent Examiner with direct supervisory authority over Mendez, but not over Brittingham.

The pertinent events began in Green's office, where Green and Brittingham were discussing documents belonging to Mendez that Brittingham had found in her files. In the course of this conversation, Mendez entered the office to deliver a memorandum by which Mendez sought to appeal an adverse personnel action relating to his participation in the 1996 Atlanta Olympics. It appears that there was some pre-existing hostility between Green and Mendez over this issue. According to Brittingham and Mendez, after Mendez delivered the memorandum, Green directed a disrespectful comment to Mendez as the latter was leaving Green's office.

Next, Brittingham and Green continued their conversation for a few minutes, following which Brittingham went to Mendez's office to return the papers and to talk. After entering Mendez's office, Brittingham closed the door behind her for privacy.

Shortly thereafter, Green abruptly entered Mendez's office, and the ensuing conduct is the basis for Brittingham's cause of action. According to Green, he entered to discuss Mendez's reaction to the adverse personnel decision. Green claims that because this matter did not involve Brittingham, he asked her to leave the office, which she did. Brittingham and Mendez recall it differently. They contend that Green entered Mendez's office and immediately began to berate Mendez about his attitude generally. According to Brittingham, Green then proceeded to grab her by the shoulders, shake her, turn her around so that her head jerked backward and then forward, and push her out of Mendez's office. Brittingham further contends that Green slammed the door on her arm as she held it up to her face to protect herself.

Following the incident, Brittingham began to experience severe headaches. She had previously undergone surgery to relieve an aneurysm and had been diagnosed as having a cyst on her brain. On October 31, 1996, she underwent brain surgery to remove the cyst.

Brittingham filed a Motion for Judgment against Green in the Circuit Court of Arlington County on April 2, 1997, seeking compensatory damages of $250,000 and punitive damages of $350,000 for two counts of battery, one count of intentional infliction of emotional distress, and one count of negligence. On June 4, 1997, the United States filed a Notice of Removal, a Certification of Scope of Employment and a Notice of Substitution, pursuant to 28 U.S.C. §§ 1442, 1446, and 2679, requesting removal of the action to

---

1. The factual record consists of affidavits of Plaintiff Debra Brittingham and Manuel Mendez and the declaration of Randall Green. In large measure, the facts are undisputed. Inferences to be drawn from the facts must be viewed in the light most favorable to Brittingham, as the party opposing the substitution. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8

L.Ed.2d 176 (1962). This is so because motions to substitute are treated as motions for summary judgment. *Wilson v. Jones*, 902 F.Supp. 673, 679 (E.D.Va.1995) (citing *Schrob v. Catterson*, 967 F.2d 929, 935 (3rd Cir.1992) (noting that "prior to *Westfall* questions of official immunity were resolved through summary judgment or dismissal early in the case")).

federal court and substitution of the United States as defendant. Section 2679(d)(1) requires that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose ... the United States shall be substituted as the party defendant." Section 2679(d)(2) specifies that the action shall be removed to a U.S. district court, and that the "certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." Accordingly, the removal was accomplished. Thereafter, by Order dated June 13, 1997, the United States was substituted as a party and the state law claims against Green were dismissed with prejudice.[2]

On June 11, 1997, the United States moved to dismiss the complaint without prejudice for failure to exhaust administrative remedies as required under 28 U.S.C. § 2675(a) [3] and to dismiss two counts with prejudice pursuant to § 2680(h) [4] and Rules 12(b)(1), 12(b)(6), and 56, Fed.R.Civ.P. In response, Brittingham moves to vacate the Order dated June 13, 1997, substituting the United States as defendant. She challenges the United States Attorney's Certification of Scope of Employment, contending that Green was, as a matter of law, not acting within the scope of his employment during the events in question. In the alternative, she requests an evidentiary hearing to resolve the alleged issues of fact concerning Green's scope of employment. The matter has been argued orally and in writing and is now ripe for disposition.

## II.

■ Brittingham here challenges the certification by the United States that Green's torts occurred within the scope of his employment. Although the statute specifies that certification "shall conclusively establish scope of employment for purposes of removal," it is silent on whether the certification is conclusive for purposes of substitution. 28 U.S.C. § 2679(d)(2). Until 1995, the circuits were split on whether the certification was conclusive on substitution, with the Fourth Circuit concluding that it was. *See Johnson v. Carter*, 983 F.2d 1316 (4th Cir.1993) (discussing circuit split and concluding that the Attorney General certification is conclusive). In 1995, however, the Supreme Court resolved the circuit split, deciding in *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995), that the certification is not conclusive for purposes of substitution. *Id.* at 433–35, 115 S.Ct. at 2236. On remand, the Fourth Circuit articulated the appropriate standard for district court review of the government's certification decision, noting that district courts must not defer to the government's certification decision, but instead must review the question de novo. *Gutierrez de Martinez v. Drug Enforcement Administration*, 111 F.3d 1148, 1154 (4th Cir.1997). Certification serves only as *prima facie* evidence that the defendant federal employee acted within the scope of his or her employment, thereby shifting to plaintiff the burden to prove, by a preponderance of the evidence, that the act was outside the scope of employment. *Id.* at 1153.[5] And whether the act was within the scope of employment is to be determined by reference to the *respondeat superior* law of the state in

---

2. *Brittingham v. Green*, Civil Action No. 97–875–A (Order, June 13, 1997).

3. Section 2675(a) requires that "[a]n action shall not be instituted against the United States ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency."

4. Section 2680(h) specifies that the United States does not waive its immunity for enumerated common law claims, including assault and battery.

5. In resolving the question whether the act was in the scope of employment, the district court may resolve disputed issues of fact. *Gutierrez de Martinez v. DEA*, 111 F.3d at 1153. To assist in this inquiry, the district court, in its discretion, may permit limited discovery or conduct an evidentiary hearing, but it should not do so if the certification, the pleadings, the affidavits, and any supporting documents do not reveal an issue of material fact. *Id.* at 1155. In weighing the evidence, "the district court should remain cognizant of the considerations weighing against protracted litigation under the Westfall Act." *Id.* The ample record here renders unnecessary both discovery and an evidentiary hearing.

which the alleged wrongful conduct occurred. *Id.* at 1156 (citing *Jamison v. Wiley,* 14 F.3d 222, 227 n. 2 (4th Cir.1994)). These principles applied here compel the conclusion that Green was acting within the scope of his employment.

## III.

 Analysis properly begins with identification of the proper governing legal principles. In this respect, the parties do not dispute that the alleged torts occurred in Virginia, and that the Virginia law of *respondeat superior* is controlling. It is settled in Virginia that an employee acts within the scope of employment when:

> (1) [The act] was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, "and did not arise *wholly* from some external, independent and personal motive on the part of the [employee] to do the act upon his own account."

*Kensington Assocs. v. West,* 234 Va. 430, 432, 362 S.E.2d 900, 901 (1987) (emphasis added) (quoting *Broaddus v. Standard Drug Co.,* 211 Va. 645, 653, 179 S.E.2d 497, 503–04 (1971) (second alteration in original)). Virginia courts look not at "whether *the tortious act itself* is a transaction within the ordinary course of business of the master, or within the scope of the servant's authority," but at "whether *the service itself, in which the tortious act was done,* was within the ordinary course of [the master's] business or within

the scope of [the servant's] authority." *Commercial Business Systems, Inc. v. BellSouth Servs. Inc.,* 249 Va. 39, 44, 453 S.E.2d 261, 265 (1995) (quoting *Davis v. Merrill,* 133 Va. 69, 71–72, 112 S.E. 628, 631 (1922) (emphasis in original)).[6]

 It is equally settled that "Virginia courts take a fairly broad view of scope of employment, and hold that even intentional torts may be within the scope of employment." *Gutierrez de Martinez v. DEA,* 111 F.3d at 1156. Again, the proper focus is the context in which the intentional tort occurred, namely did it occur in the course of the employee's performance of a service for the employer. Thus, if the employee commits the intentional tort while performing a service for the employer, then the tort is within the scope of the employee's work. Otherwise, it is not.[7] In this regard, even acts performed in the employer's service will still be outside the scope of employment if they arise wholly from "external, independent, and personal" motives. *See Jamison,* 14 F.3d at 237 (holding that supervisor's negative reviews of employee's work were outside the scope of his employment when such reviews were made solely in retaliation to claims the employee had filed against the supervisor); *cf. Kensington,* 234 Va. at 431, 435–36, 362 S.E.2d at 901, 903–904 (finding security guard's "horseplay" with his loaded pistol an "independent venture" motivated by his "desire to have 'fun'" and therefore outside the scope of his employment).

## IV.

The next step in the analysis is to apply these settled Virginia principles to the facts

---

6. *See, e.g., Plummer v. Center Psychiatrists,* 252 Va. 233, 237, 476 S.E.2d 172, 174–175 (1996) (holding that psychiatrist who sexually assaulted a patient during treatment could be found to have acted within the scope of his employment); *BellSouth,* 249 Va. at 45, 453 S.E.2d at 266 (holding that an employee who accepted bribes could have acted within the scope of employment even though his "willful and malicious acts" were "outrageous and violative of his employer's rules" and "his motive was personal—to advance his self-interest, rather than the interest of [his employer]").

7. Of course, the location of the line demarcating those intentional torts that occur in the employer's service from those that do not may be indistinct, even to the practiced judicial eye. *Compare Abernathy v. Romaczyk,* 202 Va. 328, 117 S.E.2d 88 (1960) (employee deliveryman who hit another driver did not act within the scope of employment when the two drivers were arguing over which of them had caused an accident), *with Tri-State Coach Corporation v. Walsh,* 188 Va. 299, 49 S.E.2d 363 (1948) (employee bus driver who hit another driver *did* act within the scope of employment when the two drivers were arguing over the manner in which the employee driver was permitted to drive his bus).

**1018**

as they appear in the record. The facts as established in the certification, the pleadings, the affidavits of Brittingham and Mendez, and the declaration of Green are adequate to decide whether Green acted within the scope of his employment. For purposes of the scope-of-employment issue, Brittingham's disputed contention that Green assaulted her is accepted as true. The only material issue on which Brittingham and Green appear to differ is Green's motivation for confronting Mendez, and even that difference is superficial. The accounts establish that Green was reprimanding Mendez at work, during working hours, and for his attitude at work, not from wholly external, independent, and personal motives.[8] Since the service of disciplining an employee clearly is within the ordinary course of the PTO's business and within the scope of Green's authority as a supervisor, it follows that any tortious acts allegedly committed during this service were within the ordinary course of the PTO's business and within the scope of Green's duties.

It is immaterial whether the precise tortious act or acts can be said to be within the scope of Green's authority. Torts, especially intentional torts, may rarely, if ever, be said to be within the scope of an employee's duties, since employers do not typically authorize employees to commit torts. For this reason, Virginia law sensibly focuses the inquiry not on the precise tortious act alleged, but rather on the nature of the service in which the act occurred. In this case, the parties agree that Green had no independent motive to commit a tortious act on Brittingham in particular, and that the alleged assault was intended to allow Green to speak to Mendez in private in furtherance of reprimanding him for his attitude. These facts compel the conclusion that the alleged assault was part of the service of disciplining Mendez and was therefore within the scope of Green's employment.[9]

Accordingly, the certification by the United States that Green's torts occurred within the scope of his employment is correct for purposes of substitution, and the motion to vacate must be denied.

## V.

█ The final step in the analysis concerns the consequence of the substitution, which, in this instance, is a non-prejudicial dismissal.

Section 2675(a) of Title 28 requires that a plaintiff exhaust administrative remedies before filing an action. The Supreme Court most recently ruled on this requirement in *McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993), in which it upheld the dismissal of a complaint prior to the filing of an administrative claim. There, the Supreme Court held that

> [t]he command that an "action shall not be instituted ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency ..." is unambiguous. We are not free to rewrite the statutory text.... The interest in orderly administration of this body of litigation is best served by adherence to a straightforward statutory command.

*McNeil*, 508 U.S. at 111–12, 113 S.Ct. at 1983–84. Similarly, the Fourth Circuit has ruled that the requirement that an administrative claim be filed before filing suit is jurisdictional and not subject to waiver on equitable grounds. *See. e.g., Ahmed v. United States*, 30 F.3d 514, 516–17 (4th Cir.1994); *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir.1990).

Here, Brittingham has failed to file an administrative claim prior to commencing

---

8. Brittingham has produced no specific evidence or the forecast of specific evidence that Green reprimanded Mendez for reasons not related to work. Instead, she has speculated, based on the tension between Green and Mendez and the allegation that Green's words focused on Mendez's attitude, that Green acted entirely out of personal hostility toward Mendez. Such speculation is not entitled to any weight. To establish an issue of fact, the plaintiff must submit specific evi-

dence or the forecast of specific evidence that contradicts the certification, not mere conclusory allegations and speculation. *Gutierrez de Martinez v. DEA*, 111 F.3d at 1155.

9. The fact that Brittingham was a person outside the supervisor-subordinate relationship is not material to the scope-of-employment issue.

this civil action. This failure compels the conclusion that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1346(b). Accordingly, the complaint must be dismissed without prejudice. Given this conclusion, the motion to dismiss two counts with prejudice pursuant to Rule 12(b)(6), Fed. R.Civ.P. is not reached and must therefore be denied as moot.

An appropriate order has issued.