Citation Nr: 1550145 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 13-15 626 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent prior to July 10, 2015, and in excess of 40 percent thereafter for low back strain. 

2. Entitlement to a total disability rating based on individual unemployability due to the service-connected disabilities (TDIU). 


ATTORNEY FOR THE BOARD

E. Skiouris, Associate Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from May 1997 to June 1999.

This matter is before the Board of Veterans' Appeals (Board) on appeal from an October 2011 rating decision, which, in relevant part, granted service connection for low back strain, evaluated at 10 percent disabling, effective from March 25, 2011; and from a December 2012 Decision Letter, which denied entitlement to a TDIU rating, by the Department of Veterans Affairs (VA) Regional Office (RO) in Saint Petersburg, Florida. 

In October 2011, the Veteran filed a timely notice of disagreement that contested the initial 10 percent rating assigned for the low back strain in the October 2011 decision. In April 2013, the RO issued a statement of the case (SOC) as it pertains to the low back strain. The Veteran perfected her appeal with a VA Form 9 in April 2013. In August 2013, the RO issued a SOC with respect to both the evaluation of low back strain (at that time evaluated as 10 percent disabling) and entitlement to a TDIU rating. The Veteran subsequently perfected her appeal as to both issues, in September 2013. 

The Board remanded this case for further development in April 2015. The issues remanded by the Board were: entitlement to an initial rating in excess of 10 percent for the service-connected low back strain, entitlement to service connection for a left knee disorder, to include as secondary to service-connected bilateral pes planus and low back strain, entitlement to service connection for a right knee disorder, to include as secondary to service-connected bilateral pes planus and low back strain, and entitlement to a TDIU rating due to the service connected disabilities.

In an August 2015 rating decision, the Agency of Original Jurisdiction (AOJ) increased the rating for the service-connected low back strain from 10 percent to 40 percent disabling, effective July 10, 2015. As this rating action represents a partial grant of the benefit sought on appeal, as it pertains to the issue of the initial evaluation assigned for the service-connected low back strain, this matter remains on appeal before the Board. See AB v. Brown, 6 Vet. App. 35 (1993). In August 2015, the AOJ issued a supplemental SOC that addressed the evaluation of the service-connected low back strain and the TDIU rating.

By that same August 2015 rating decision, the AOJ granted service connection for: (1) right knee strain, evaluated at 10 percent disabling, effective from March 25, 2011; (2) a left knee condition, evaluated at 10 percent disabling, effective from March 25, 2011; (3) a left knee meniscus disorder, evaluated at 20 percent disabling, effective from July 10, 2015; (4) radiculopathy of the left lower extremity, evaluated at 20 percent disabling, effective from July 10, 2015; and (5) radiculopathy of the right lower extremity, evaluated at 10 percent disabling, effective from July 10, 2015. Upon review, however, the information of record does not contain a letter of notification, which notifies the Veteran of these determinations and of her appellate rights. While the August 2015 rating action constitutes a full grant of benefits with respect to the awards of service connection, the downstream issues concerning the effective date and level of the disability rating assigned for each of the aforementioned conditions, following the grants of service connections, are separate appealable issues. See Grantham v. Brown, 111 F.3d 1156 (Fed. Cir. 1997). Since the Veteran has not been afforded written notice of her right to appeal the remaining adjudicative actions effectuated by the August 2015 rating decision, by the submission of a notice of disagreement within one year, and to preserve her right of due process under the law, the Board refers this matter to the attention of the AOJ for appropriate action.

The requested development was completed, and the case has now been returned to the Board for further appellate action. 

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of these electronic records. 


FINDINGS OF FACT

1. From March 25, 2011, to October 16, 2011, the evidence is at least in relative equipoise as to whether the degree of impairment associated with the Veteran's low back strain more nearly approximates forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees on account of additional functional impairment due to pain.

2. From October 17, 2011, the evidence is at least in relative equipoise as to whether the degree of impairment associated with the Veteran's low back strain more nearly approximates flexion of the thoracolumbar spine to 30 degrees or less due to functional impairment due to pain.

3. Throughout the entire appeal period, the evidence is in relative equipoise as to whether the Veteran is unemployable due to the combined effect of her service-connected disabilities.


CONCLUSION OF LAW

1. Resolving all reasonable doubt in favor of the Veteran, the criteria for a 20 percent rating, but no higher, for low back strain, from March 25, 2011, to October 16, 2011, 5, 2011, are not met. 38 U.S.C.A. § 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321(b)(1), 4.2, 4.7, 4.10, 4.14, 4.21, 4.40, 4.41, 4.45, 4.59, 4.71(a) Diagnostic Code 5237 (2015).

2. Resolving all reasonable doubt in favor of the Veteran, the criteria for a 40 percent rating, but no higher, for a low back strain, from October 17, 2011, are met. 38 U.S.C.A. § 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321(b)(1), 4.2, 4.7, 4.10, 4.14, 4.21, 4.40, 4.41, 4.45, 4.59, 4.71(a) Diagnostic Code 5237 (2015).

3. Resolving all reasonable doubt in favor of the Veteran, the criteria for a TDIU rating are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2015).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duty to Notify and Assist
 
The Veterans Claims Assistance Act of 2000 (VCAA) imposes on VA an obligation to notify claimants what information or evidence is needed for claim substantiation and respective evidentiary gathering duties. Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015). 

The Board observes that the Veteran has appealed with respect to the propriety of the initially assigned rating for her service connection for low back strain. In Dingess, the United States Court of Appeals for Veterans Claims (Court) held that in cases in which service connection has been granted and an initial disability rating and effective date have been assigned, the typical service connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Dingess v. Nicholson, 19 Vet. App. at 490-91 (2006); see also 38 C.F.R. § 3.159(b)(3)(i) (2015). Thus, because the notice that was provided before service connection was granted was sufficient, VA's duty to notify in this case has been satisfied. See generally Turk v. Peake, 21 Vet. App. 565 (2008) (where a party appeals from an original assignment of a disability rating, the claim is classified as an original claim, rather than as one for an increased rating); see also Shipwash v. Brown, 8 Vet. App. 218, 225 (1995); see also Fenderson v. West, 12 Vet. App. 119 (1999) (establishing that initial appeals of a disability rating for a service-connected disability fall under the category of "original claims").

With respect to notice for the issue of entitlement to a TDIU due to the service-connected disabilities, a letter was sent in October 2011, providing the Veteran with the requisite information to substantiate a claim. 

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the information and evidence that have been associated with the claims file include the Veteran's service treatment records, service personnel records, her statements in support of the claim, in addition to those of her friends and peers are also of record. The Board has also obtained VA treatment records and VA examination reports from August and November 2011, and July 2015, which may be accepted as adequate reports of examination of the Veteran, without further VA examination. 38 C.F.R. § 3.326. After a careful review of such statements, the Board has concluded that no available, pertinent evidence has been identified that remains outstanding. 

These medical reports provide evidentiary information that speaks directly to the Veteran's subjective complaints as well as to the objective findings found on evaluation, and they represent the actual evaluation results of the Veteran's participation in those clinical studies. Therefore the Board finds that the Veteran has been provided adequate medical examinations in conjunction with her claim. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (holding that a medical opinion is adequate when it is based upon consideration of a claimant's prior medical history and examinations and describes the disability in sufficient detail so that the evaluation of the claimed disability will be a fully informed one); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011) (finding an examination report to be lacking sufficient detail and as a result inadequate as it failed to address any range-of-motion loss specifically due to pain and any functional loss due to pain during flare-ups).

The Board notes that the case was remanded in April 2015. The Board's 2015 remand directed the AOJ to obtain treatment records from Fort Pierce in March or April of 2011, VAMC at West Palm Beach from April 2011 forward, Lawnwood Regional Medical Center, and the Social Security Administration (SSA). 

Records from Lawnwood Regional Medical Center and Heart Institute were obtained. Records from the West Palm Beach VAMC, for the period March 2011 through August 2015 (to include records from Fort Pierce from April 2011), were obtained. Attempts were made to obtain records from the Social Security Administration (SSA). A negative response was received in April 2015, and again in May 2015, with the response detailing that no such records exist. Subsequently the Veteran was then sent correspondence requesting any SSA records in her possession. 

In April 2015, and May 2015, the Veteran was asked to indicate if she had additional evidence or information in support of her claim. In May 2015 she submitted correspondence with enclosures indicating she had no additional evidence to submit. Accordingly, the requirements of the remand were ultimately accomplished and the prior remand instructions were substantially complied with. See Stegall v. West, 11 Vet. App. 268 (1998). 

The Veteran has not identified any pertinent evidence that remains outstanding. Accordingly, VA's duty to assist is met and the Board will address the merits of the claim.


II. Increased Rating Claim

A. Legal Criteria 

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1 (2015).

The basis of disability evaluations is the ability of the body as a whole to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015).

In Fenderson v. West, 12 Vet. App. 119 (1999), it was held that evidence to be considered in the appeal of an initial assignment of a disability rating was not limited to that reflecting the then current severity of the disorder. Cf. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In Fenderson, the Court also discussed the concept of the 'staging' of ratings, finding that, in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. Id. at 126-127.

The Court has held that evaluation of a service-connected disability involving a joint rated on limitation of motion requires adequate consideration of functional loss due to pain under 38 C.F.R. § 4.40 and functional loss due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. § 4.45 (2015). See, DeLuca v. Brown, 8 Vet. App. 202 (1995).

Another intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59; Burton v. Shinseki, 25 Vet. App. 1 (2011).

Although pain may cause a functional loss, pain itself does not constitute functional loss. Rather, pain must affect some aspect of 'the normal working movements of the body' such as 'excursion, strength, speed, coordination, and endurance,' in order to constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 38-43 (2011) (quoting 38 C.F.R. § 4.40).

Lumbar spine disabilities are rated on the basis of limitation of motion, with evaluations assigned under the General Rating Formula for Diseases and Injuries of the Spine. A note following the schedule criteria indicates that, for VA compensation purposes, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion are 0 to 30 degrees, and left and right lateral rotation are 0 to 30 degrees. 38 C.F.R. § 4.71a, Plate V, General Rating Formula for Diseases and Injuries of the Spine, Note 2 (2015). Diagnostic Codes 5235-5243.

Under the General Rating Formula for Diseases and Injuries of the Spine, a 10 percent evaluation is warranted for disability of the thoracolumbar spine when there is forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height.
A 20 percent evaluation is warranted for disability of the thoracolumbar spine when there is forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. An evaluation higher of 40 percent is not warranted unless there is forward flexion of the thoracolumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine. An evaluation of 50 or greater requires unfavorable ankylosis of the entire thoracolumbar spine.

In the alternative, an evaluation can be assigned under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. Intervertebral disc syndrome is to be evaluated either under the new general rating formula for diseases and injuries of the spine or under the formula for rating intervertebral disc syndrome based on incapacitating episodes, whichever method results in a higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25. 

For intervertebral disc syndrome manifested by incapacitating episodes having a total duration of at least six weeks during the past 12 months, a 60 percent evaluation is warranted; with incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months, a 40 percent evaluation is warranted; with incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months, a 20 percent evaluation is warranted; and with incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months, a 10 percent evaluation is warranted. 

Note 1 of that code provides that, for purposes of evaluations under Diagnostic Code 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician.


B. Factual Background and Analysis
 
The Veteran claims that she is entitled to an initial disability evaluation in excess of 10 percent for her service-connected low back strain prior to prior to July 10, 2015, and in excess of 40 percent from that time.

Turning to the evidence of record, in April 2011, the Veteran submitted statements from family members and a service comrade, all of whom have attested to having observed the Veteran suffer from symptoms of chronic back pain, and described that her pain symptoms have limited her activities of daily living.

A VA examination was held in August 2011, at the West Palm Beach VAMC. The examiner diagnosed low back strain. The Veteran denied radicular pain. The examination showed tenderness, not severe enough to result in abnormal spinal contour or abnormal gait. Range of motion testing revealed flexion to 70 degrees (normal is 90 degrees), extension to 25 degrees (normal is 30 degrees), and left lateral flexion to 30 degrees (normal is 30 degrees), right lateral flexion to 25 degrees (normal is 30), left lateral rotation to 25 degrees (normal is 30) and right lateral rotation to 30 degrees (normal is 30). There was evidence of pain with range of motion. On repetitive testing there was no additional limitation due to painful motion, fatigue, weakness or incoordination and range of motion values were unchanged from baseline testing. 

In October 2011, the Veteran submitted copies of hospital discharge orders, dated October 17, 2011, which reveal that the Veteran received hospital treatment for severe back pain. According to the statements provided by the Veteran in October and December of 2011, she presented at the emergency room at the VA Medical Center in West Palm Beach, on October 17, 2011, due to extreme back pain, which she described as so severe that she could not walk, sit or lay down without experiencing pain. The Veteran elaborated that her back pain, at times, is so severe that she has to lay down, and that her back gets worse, at times, due to the weather, standing, and sitting. She explains that she has been prescribed pain medications, which limits her ability function in her personal life as a wife and mother. She further explains that her symptoms of back pain, at times, make it difficult for her to work (4 hours a week), but she suffers to do so for financial reasons, and comes home to deal with the pain.

In November 2011, the Veteran underwent a VA examination, once again at the West Palm Beach VAMC, which revealed range of motion to be: flexion to 30 degrees (normal is 90 degrees), extension to 10 degrees (normal is 30 degrees), and left lateral flexion to 15 degrees (normal is 30 degrees), right lateral flexion to 15 degrees (normal is 30), left lateral rotation to 20 degrees (normal is 30) and right lateral rotation to 20 degrees (normal is 30). Due to the severity of her pain she was unable to perform repetitive-use testing. With regard to the Mitchell issues, there were complaints of pain, excess fatigability, less movement than normal, and disturbance in locomotion. The Veteran reported flare ups that impact the function of her spine. There was objective evidence of painful motion in forward flexion at 20 degrees. The Veteran had pain on movement, and disturbance of locomotion. There was no evidence of guarding or muscle spasm of the thoracolumbar spine. The Veteran denied radicular pain. The examiner noted the Veteran does not have intervertebral disc syndrome of the spine, nor does she have arthritis. 

In July 2015, at the West Palm Beach VAMC, the Veteran had a VA examination. The examination revealed range of motion to be: flexion to 30 degrees, extension to 20 degrees, right lateral flexion to 20 degrees, left lateral flexion to 15 degrees, right lateral rotation to 20 degrees, and left lateral rotation to 15 degrees. The examiner reported evidence of pain during the range of motion. Repetition of the range of motion showed additional functional limitation due to pain, fatigue, weakness, lack of endurance and incoordination. There was evidence of muscle strength impairment, and impaired reflexes. There was no evidence of decreased sensation to light touch or ankylosis of the spine. Her straight leg test was negative bilaterally. The Veteran reported using a brace and a cane on a constant basis. With regard to the Mitchell issues, there were complaints of pain, and evidence of fatigue, weakness, lack of endurance and incoordination. The Veteran reported daily flare-ups. The examiner noted the Veteran was experiencing a flare up and reported the following observations with regard to range of motion testing: forward flexion to 25 degrees, extension to 20 degrees, right lateral flexion to 15 degrees, left lateral flexion to 15 degrees, right lateral rotation to 20 degrees, and left lateral rotation to 20 degrees. The examiner was unable to comment on whether pain, weakness, fatigability or incoordination limits her functional ability with repeated use over time. The examiner was unable to say so without mere speculation, because the Veteran was not examined after repeated use over a period of time. The Veteran was able to perform repetitive use testing with at least three repetitions. X-rays from September 2012, and July 2015 were compared. There were no abnormalities of the lumbar spine seen, and no evidence of arthritis.

The West Palm Beach VAMC, Lawnwood Regional Medical Center, treatment from 2011 through 2015, records complaints of chronic back pain. 

The Veteran's lumbar spine disability is currently rated under Diagnostic Code 5237. Under this code, a 20 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. An evaluation higher of 40 percent is not warranted unless there is forward flexion of the thoracolumbar spine to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine. An evaluation of 50 or greater requires unfavorable ankylosis of the entire thoracolumbar spine.

As documented above, prior to October 2011, the record indicates that at the August 2011 VA examination, the lowest flexion on exam was found to be 70 degrees, and the VA examiner found no muscle spasms, guarding, abnormal gait, or abnormal spinal contour, which are required for a 20 percent rating. And, while the Veteran's limitations of thoracolumbar motion, in degrees, were not to a level to warrant a 20 percent rating, the examiner did detect pain in all planes of motion, and the Veteran's joint function of the thoracolumbar spine was nonetheless limited and less than normal range, in most planes of motion, due to pain having a functional impact. While the examiner did specify the point at which pain began during range of motion testing, the Board finds that with consideration of the Veteran's complaints of back pain as well as the functional limitations that have been described after she engages in daily activities (as corroborated by her family members and friends in their statements in April 2011), her low back strain would presumably account for some additional functional impairment on daily, repeated use of her back. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. §§ 4.40, 4.45. Resolving all reasonable doubt in the Veteran's favor, the Board concludes that the additional limitation of motion in the context of forward flexion, which was limited to 70 degrees, would nearly approximate limitation of forward flexion at least to 60 degrees. Accordingly, a 20 percent rating for the Veteran low back strain is warranted at least for the period from March 25, 2011, to October 16, 2011.

At no time prior to October 17, 2011, did the Veteran have forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine for a 40 percent rating. At no time during the pendency of this claim has there been evidence to suggest that the Veteran suffers from unfavorable ankylosis of the entire thoracolumbar spine, for a 100 percent rating.

The Board finds that from October 17, 2011, the criteria for a 40 percent rating and no higher for the service-connected low back strain have been met. Consistent with a 40 percent rating, at her October 2011 emergency hospital visit, the Veteran presented with increased symptoms of back pain, which she described were so severe that she could not walk, sit or lay down without pain. Nearly a month later, at the November 2011 VA examination, the lowest flexion on exam was found to be 20 degrees (with pain), with no findings of ankyloses, consistent with a 40 percent rating. At the July 2015 VA examination, the lowest flexion on exam was found to be 25 degrees. For a rating in excess of 40 percent, there must be findings of ankylosis, and there were no such findings. The Board notes that ankylosis is defined as immobility and consolidation of a joint due to disease, injury, or surgical procedure. See Dorland's Illustrated Medical Dictionary 93 (30th ed. 2003). See also 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, NOTE (5) (defining ankylosis as fixation of a joint in a particular position). Given the motion found by the VA examiners (including multiple findings of no ankylosis) and VA medical providers, the Board finds that that the Veteran does not have ankylosis of the thoracolumbar spine. As such, an evaluation in excess of 40 percent is not warranted. Thus, when considering the Veteran's increased symptom of pain in October 2011, in tandem with the VA evaluation results in November 2011 and July 2015, the Board finds it reasonable to conclude that this evidence more nearly approximates a showing of forward flexion to 30 degrees or less as early as October 17, 2011. Therefore, resolving all reasonable doubt in the Veteran's favor, a 40 percent rating, but not higher, for the Veteran's low back strain is warranted for the period beginning October 17, 2011.

Evaluation of a service-connected disability involving a joint rated on limitation of motion requires adequate consideration of functional loss due to pain under 38 C.F.R. § 4.40 and functional loss due to weakness, fatigability, incoordination or pain on movement of a joint under 38 C.F.R. § 4.45. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. § 4.40 state that disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. As the November 2011 examination demonstrated, the Veteran had pain with forward flexion at 20 degrees. Per the July 2015 examination, the Veteran's was experiencing a flare-up during the examination, and as a result flexion was limited to 25 degrees. To be entitled to the next higher evaluation of 50 percent, there must be ankylosis of the entire thoracolumbar spine. Even with the limitations put on the Veteran's spine as evidenced by the decreased ability to perform normal working movements of the body, there is no evidence of ankylosis, and therefore the next higher evaluation is not warranted. 

Higher evaluations are also available for intervertebral disc syndrome. According to the VAMC records and the VA examinations, the Veteran does not suffer from intervertebral disc syndrome. As such, rating her under Diagnostic Code 5243 for IVDS is not appropriate. The Board notes that under Diagnostic Code 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. The record evidence does show that the Veteran presented for emergency hospital care due to severe back pain in October 2011; and, when the Veteran presented for examination in July 2015, she reported severe back pain, in that she would have to rest when her back pain flares up. However, neither episode has been described to result in the Veteran being incapacitated for a total duration of at least 4 weeks during a 12-month period. In fact, in her October and December 2011 statements, the Veteran related that while difficult do so, she continued to report for work despite her pain. And, her reports in July 2015 have not been shown to have been prescribed by a physician. As such, even if she had IVDS, an evaluation due to incapacitating episodes would not result in an evaluation higher than those already assigned herein.

Accordingly, resolving all doubt in the Veteran's favor, the Board finds that a 20 percent (staged) rating, but not higher, is warranted from March 25, 2011, to October 16, 2011; and that a 40 percent (staged) rating, but no higher, is warranted as of October 17, 2011.

Additionally, the Board has contemplated whether the case should be referred for extra-schedular consideration. In this regard, to accord justice in an exceptional case where the scheduler standards are found to be inadequate, the field station is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1).

Pursuant to 38 C.F.R. § 3.321(b), ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 

In Thun v. Peake, 22 Vet. App. 111 (2008), the Court specified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. The Court stated that the RO or the Board must first determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id. 

If the RO or the Board finds that the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the Veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.

VA's General Counsel has stated that consideration of an extra-schedular rating under 3.321(b)(1) is only warranted where there is evidence that the disability picture presented by the Veteran would, in that average case, produce impairment of earning capacity beyond that reflected in the rating schedule or where evidence shows that the Veteran's service-connected disability affects employability in ways not contemplated by the rating schedule. See VAOPGCPREC 6-96 (Aug. 16, 1996). 

In Thun, the Court further explained that the actual wages earned by a particular Veteran are not considered relevant in the calculation of the average impairment of earning capacity for a disability, and contemplate that Veterans receiving benefits may experience a greater or lesser impairment of earning capacity than average for their disability. The Thun Court indicated that extraschedular consideration cannot be used to undo the approximate nature of the rating system created by Congress. 

The Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance. However, the Board is not precluded from raising this question, see Floyd v. Brown, 9 Vet. App. 88 (1996), and addressing referral where circumstances are presented which the Director of VA's Compensation and Pension Service might consider exceptional or unusual. Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

The Board is aware of the Veteran's complaints as to the effects of her service-connected lumbar spine disability on her activities of work and daily living. In the Board's opinion, all aspects of this disability are adequately encompassed in the assigned schedular ratings. In this respect, the Veteran complains of pain and limitation of motion. Her 20 then 40 percent rating contemplates the impairment of function caused by painful and limited motion. Specifically, the Board notes that the rating criteria for the Veteran's service-connected low back strain adequately contemplate the level of impairment that is demonstrated by the evidence of record. 

As noted above, musculoskeletal disability rating contemplates factors such as limitation of motion; functional loss due to pain, weakness, fatigability, incoordination, or pain on movement of a joint; and actually painful, unstable, or malaligned joints due to healed injury. The low back strain in the case at hand is not characterized by any additional complaints or symptoms that are not contemplated by the applicable rating criteria. Furthermore, the rating criteria of Diagnostic Code 5237 broadly evaluate the Veteran's low back strain based on overall severity, which is not limited in scope to specific symptoms. By definition, any manifestation of this disability that contributes to the severity of that disability is contemplated by the rating criteria. The Veteran has not described any exceptional or unusual features associated with the service-connected disability being rated herein. In short, the Board finds that the assigned schedular evaluations are adequate. Therefore, the Veteran's subjective complaints were included in the currently assigned ratings. Thus, the Veteran's disability pictures are contemplated by the rating schedule, and the assigned scheduler evaluations are therefore, adequate. See Thun, 22 Vet. App. 111, 114-15 (2008). Consequently, referral for extraschedular consideration is not warranted. 

Since the preponderance of the evidence is against the claim, the provision of 38 U.S.C. § 5107(b) regarding reasonable doubt are not applicable. Based on the above, the Board finds that a rating of 20 percent, but not higher, is warranted from March 25, 2011, to October 16, 2011, and that a rating of 40 percent, but not higher, is warranted thereafter. The above evidence demonstrates none of the limitation of motion requirements or other types of impairment that are necessary to warrant a higher rating at any point as listed in the rating criteria, above, even when taking into consideration factors such as functional impairment due to pain, fatigue, weakness, and incoordination. In the absence of evidence of incapacitating episodes, an increased rating based on the applicable rating criteria is not warranted. 

III. Total Disability Individual Unemployability

A total disability rating may be assigned, where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as the result of service-connected disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.340, 3.341, 4.16. Consideration may be given to a Veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or the impairment caused by any nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19.

To qualify for a total rating for compensation purposes, the evidence must show (1) a single disability rated as 100 percent disabling; or (2) that the Veteran is unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities and there is either one disability ratable at 60 percent or more, or, if more than one disability, at least one disability is ratable at 40 percent or more and the multiple service connected disabilities combine to a disability rating of 70 percent or greater. Id. 

The regulations provide that when entitlement to a benefit cannot be established without a current VA examination and a claimant, without good cause, fails to report for an examination scheduled in conjunction with a claim for increase, the claim shall be denied. 38 C.F.R. § 3.655(a), (b). Thus, the Board must determine (1) whether the examination was necessary to establish entitlement to the benefit sought, and (2) whether the Veteran lacked good cause to miss the scheduled examination. Turk v. Peake, 21 Vet. App. 565, 569 (2008).

While the Veteran may be unemployed, the dispositive issue is whether she is capable of performing the physical and mental acts required by employment, not whether she can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

Here, the Board in April 2015 found that a Social Industrial Survey was necessary to ascertain the impact of her service-connected disabilities on her ordinary activities, to include her employability. The Veteran was initially scheduled for a VA examination on July 24, 2015. The Veteran cancelled her examination, and the examination was rescheduled for July 31, 2015. The Veteran contacted the West Palm Beach VAMC on July 28, 2015, indicating she believed she no longer needed anymore exams because her claim was being rated. On July 31, 2015, the Veteran failed to report for the examination. 

The Board notes that the Veteran's record is replete with VA and private medical records, as well as VA examinations, which document the severity of her service-connected conditions and the impact the conditions have on the Veteran. The record indicates the Veteran was under the impression she no longer needed to attend the examination and acted accordingly. The Board finds that the criteria listed in Turk v. Peake, 21 Vet. App. 565, 569 (2008), have been met, as evidenced by the fact that there is sufficient medical evidence to warrant an additional examination unnecessary, and the Veteran had good cause to miss the examination. 

For a Veteran to prevail on a claim for a TDIU rating, the record must reflect some factor which takes the case outside the norm. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. See 38 C.F.R. 4.16(a). Van Hoose v. Brown, 4 Vet. App. 361 (1993).

In determining whether a Veteran is entitled to a total disability rating based upon individual unemployability, the Veteran's nonservice-connected disabilities and his advancing age may not be considered. 

As of March 25, 2011, the Veteran is service connected for bilateral pes planus rated as 30 percent disabling, low back strain rated as 20 percent disabling, right knee strain associated with bilateral pes planus rated as 10 percent disabling, and left knee condition associated with bilateral pes planus rated as 10 percent disabling, for a combined evaluation of 60 percent. 38 C.F.R. § 4.25 (2015). Given that the record evidence establishes that the aforementioned disabilities either result from common etiology or a single accident (i.e., the Veteran's feet falling flat during service), or affect a single body system (i.e., orthopedic), the disabilities may be considered as one disability rated at 60 percent. 38 C.F.R. § 4.16(a)(2)-(3) (2015). 

As of October 17, 2011, the Veteran is service connected for bilateral pes planus rated as 30 percent disabling, low back strain rated as 40 percent disabling, right knee strain associated with bilateral pes planus rated as 10 percent disabling, left knee condition associated with bilateral pes planus rated as 10 percent disabling, for a combined evaluation of 70 percent.

In either event, the Veteran meets the percentage threshold requirements provided in 38 C.F.R. § 4.16(a) for consideration of entitlement to a TDIU rating.

In Hatlestad v. Derwinski, 5 Vet. App. 524, 529 (1993), the United States Court of Appeals of Veterans Claims (Court) held that the central inquiry in determining whether a Veteran is entitled to a total rating based on individual unemployability is whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability. In Hodges v. Brown, 5 Vet. App. 375 (1993), the Court found that although a Veteran could undertake employment despite his service-connected disabilities, he was unemployable because he was unable to secure employment due to his disabilities.

The Veteran's friends and family submitted statements in April 2011. The Veteran's spouse reported seeing her in pain on a daily basis. Her mother supplied a statement to the effect that the Veteran is hardly able to work. Her friend, D.F., reported that the Veteran was limited in the number of hours she could work due to her pain.

In February 2013, the Veteran's former employer, Indian River State College, supplied documentation indicating that the Veteran's last day would be February 27, 2013. The reason given for the Veteran's departure was due to medical reasons.

According to the July 2015 VA examination, the Veteran reported that she has been unable to work in years. She reported daily pain which impacts her ability to maintain employment. The examiner opined that the Veteran's spine condition impacts her ability to work.

The Veteran filed a claim for a TDIU rating in March 2011, and she submitted an Application For Increased Compensation Based on Unemployability during the appeal period. Additionally, the Veteran stated that she was not employed due to her service-connected conditions. As of March 25, 2011, the Veteran meets the criteria for TDIU, and the evidence shows she was unable to follow a substantially gainful occupation as a result of her disabilities. In this regard, the Board observes that the record indicates that the Veteran had part-time employment with a work schedule of four hours a week, which is indicative of no more than marginal employment. There are statements in the record as cited above, indicating the Veteran had great difficulty working due the painful symptoms associated with her spine and bilateral foot disabilities, and ultimately left employment in early 2013. VA examiners have found severe impairment to the Veteran based on her spine symptoms, and thus, based on the evidence in its entirety, and resolving the benefit of the doubt in the Veteran's favor, TDIU is granted.


ORDER

Subject to the law and regulations governing the award of monetary benefits, entitlement to an initial disability rating of 20 percent for low back strain, from March 25, 2011, to October 16, 2011, is granted.

Subject to the laws and regulations governing the award of monetary benefits, entitlement to an initial disability rating of 40 percent for low back strain, from October 17, 2011, is granted. 

Subject to the laws and regulations governing the award of monetary benefits, entitlement to a total disability rating based on individual unemployability due to service-connected disabilities is granted.




____________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs